Shelly H. Cozakos, Bar No. 5374
SCozakos@perkinscoie.com
Dean B. Arnold, Bar No. 6814
DArnold@perkinscoie.com
PERKINS COIE LLP
251 East Front Street, Suite 400
Boise, ID  83702-7310
Telephone:  208.343.3434
Facsimile:  208.343.3232

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., an Idaho corporation, | Case No. |
| *Plaintiff,* | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| PERFORMANCE MANUFACTURING., INC., a Georgia corporation; RIMPORTS (USA), LLC, a Utah limited liability company; JEFFERY W. PALMER, an individual; and MIKE DUFF, an individual, | |
| *Defendants.* | |

Plaintiff, Scentsy, Inc., by and through its counsel of record, Perkins Coie LLP, for its causes of action against Defendants, states, alleges and complains as follows:

### I.    PARTIES

1.    Scentsy, Inc. ("Scentsy" or the "Company") is an Idaho corporation with its principal place of business located in Meridian, Ada County, Idaho.

2.      Upon information and belief, Defendant Performance Manufacturing, Inc. ("Performance Mfg.") is a Georgia corporation, with its principal place of business located in Buford, Georgia.

3.      Upon information and belief, Defendant Rimports LLC ("Rimports") is a limited liability company located in Provo, Utah.

4.      Upon information and belief, Defendant Michael Duff is an individual residing in Laguna Beach, California.  Mr. Duff is a shareholder of Performance Mfg.

5.      Upon information and belief, Defendant Jeffery Palmer is an individual residing in Provo, Utah.  Mr. Palmer is the owner in full or part of Rimports.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 1338(a) (copyright) and 1338(b) (related unfair competition claims).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Idaho and/or all Defendants are subject to personal jurisdiction in Idaho.

8.      This Court has jurisdiction over Performance Mfg. pursuant to Idaho's Long Arm Statute, Idaho Code § 5-514, in that this Defendant, on its own behalf and by its agents and employees:  (a) transact business within the State of Idaho; (b) have committed tortious acts within the state that have caused injury within this state; and/or (c) regularly solicit business within the State of Idaho.

9.      This Court has jurisdiction over Rimports pursuant to Idaho's Long Arm Statute, Idaho Code § 5-514, in that this Defendant, on its own behalf and by its agents and employees:  (a) transact business within the State of Idaho; (b) have committed tortious acts

within the state that have caused injury within this state; and/or (c) regularly solicit business within the State of Idaho.

10.     This Court has jurisdiction over Defendant Palmer pursuant to Idaho's Long Arm Statute, Idaho Code § 5-514, in that this Defendant, personally visited Plaintiff's business in Idaho for improper purposes as set forth in more detail below.  Mr. Palmer has (a) transacted business within the State of Idaho; and/or (b) has committed tortious acts within the state that have caused injury within this state.

11.     This Court has jurisdiction over Defendant Duff pursuant to Idaho's Long Arm Statute, Idaho Code § 5-514, in that this Defendant, personally transacted business in Idaho for improper purposes as set forth in more detail below.  Mr. Palmer has (a) transacted business within the State of Idaho; and/or (b) has committed tortious acts within the state that have caused injury within this state.

## III.     FACTS COMMON TO ALL CLAIMS

12.     Scentsy is an Idaho company headquartered in Meridian, Idaho.  Scentsy manufactures and sells unique wickless candle warmers and specialized fragrance bars to use with its warmers under the "Scentsy" brand.

13.     Scentsy started its business in 2004, and has grown at a rapid rate.  Scentsy has spent significant time and resources developing its high-quality, specialized products and a high-quality, reputable brand.  Scentsy's familiar mission statement and slogan – publicized on its website, product brochures, and other public company documents – is to provide creative, artistic, high-quality products that "warm the heart, enliven the senses, and inspire the soul."

14.     Scentsy warmers are designed and sculpted for Scentsy alone.  Scentsy actively protects the intellectual property in its warmers, and has not authorized anyone else to copy unique Scentsy warmer designs.

15.     Scentsy's warmers operate by using a receptacle connected to an electrical cord.  In accordance with its high-quality standards, the electrical cord of Scentsy warmers is properly insulated to avoid overheating.  In order to further ensure public safety, Scentsy warmers and electrical components are listed by Underwriters Laboratories ("UL") as electrical components.

16.     Scentsy's wax fragrance bars are also unique.  Scentsy's fragrance bars are created pursuant to a specialized formula, or "recipe," carefully and painstakingly developed by Scentsy.  Significant time and resources were devoted to the formula to ensure high-quality fragrance bars that do not separate and burn evenly.  Scentsy fragrance bars also melt at a precise temperature and hold a high percentage of fragrance oil.  These characteristics have lead Scentsy fragrance bars to standout in the marketplace.  The fragrance bar formula is essential to Scentsy's success, and is the company's most closely held secret.

17.     Since its inception, Scentsy has always marketed and sold its warmers and fragrance bars under the Scentsy name and brand, and the Scentsy name, brand, designs and packaging are inherently distinctive of Scentsy and its products.

18.     Scentsy sells its products exclusively through individual sales consultants around the United States.  Scentsy commits to its consultants that it will not sell its products through the retail market.  Scentsy enters into agreements with its consultants that contain these promises as well.  These consultants in turn represent to consumers that the only way to purchase Scentsy products is through an official Scentsy consultant.

19.     A crucial part of Scentsy's success is the good will, trust and reputation that Scentsy has worked hard to earn with its consultants and consumers.

20.     In early 2005, Scentsy began working with its primary packaging company, PakWest, Inc., to design a specialized machine to melt its wax and distribute the wax bars into individual packages. Andrew Connolly, an employee of PakWest, assisted Scentsy with its endeavors. Mr. Connolly conducted a search and eventually contacted Defendant Performance Mfg., a manufacturing company that had the capability of making the specialized wax melting machine.

21.     For a period of approximately eight months, employees and representatives of Scentsy worked with Performance Mfg. to design the specialized wax-melting machine. Eventually, Scentsy, with some assistance from Steve Sircy of Performance Mfg., completed the design of the wax-melting machine and Performance Mfg. built the machine, which is now referred to as "Alice."

22.     In order to enable Performance Mfg. to manufacture "Alice," Scentsy had to share its secret formula for its fragrance bars because the mixing temperature of the wax had to be within a narrow range for the machine to work. Before doing so, Scentsy required Performance Mfg. to execute a confidentiality agreement. Defendant Duff executed the agreement, a copy of which is attached as Exhibit A and incorporated herein by reference. Scentsy would not have shared its secret recipe for the fragrance bars, or any of the design information for the machine with Performance Mfg. unless its representatives agreed to keep the information confidential.

23.     Scentsy strictly maintains the secrecy of its proprietary, confidential and trade secret information and data and has undertaken all reasonable efforts to keep such data and

information from being disclosed to any persons or entities who are not employees or agents of Scentsy.

24.     Scentsy has also taken steps to ensure that only those Scentsy employees with a need to know such information and data have access to it.

25.     Scentsy paid Performance Mfg. the sum of $198,000.00 for the custom built wax dispensing machine and packaging system, or "Alice." A copy of the Purchase Order dated January 18, 2008 is attached hereto as Exhibit B and incorporated herein by reference.

26.     After working with "Alice," Scentsy discovered some flaws in the way it operated, and designed ways to fix these flaws. Scentsy then shared this design information with Performance Mfg., which built a second custom wax dispensing and packaging system for Scentsy referred to as "Fred."

27.     On approximately August 13, 2008, Scentsy paid Performance Mfg. the sum of $285,600.00 for "Fred." A copy of the purchase order is attached hereto as Exhibit C and incorporated herein by reference.

28.     Sometime in the Fall of 2008, Scentsy became aware that certain Wal-Mart stores in Utah were selling candle warming products and fragrance bars manufactured by Rimports under the name "*Scents*ationals" that appeared to be, and in some cases were nearly identical to Scentsy warmers and fragrance bars. Photos of product comparisons are attached hereto as Exhibit D.

29.     In approximately November, 2008, Scentsy representatives were contacted via telephone on more than one occasion by Mr. David Taylor, who represented himself to have formerly worked for Defendant Palmer. Mr. Taylor resides in Spanish Fort, Utah. Mr. Taylor indicated that his wife works for Rimports as well.

30.     Scentsy learned through Mr. Taylor that Defendant Palmer deliberately set out to discover how Scentsy was manufacturing its products.  Defendant Palmer represented to Taylor that he personally visited Scentsy's manufacturing facility in Meridian, Idaho and received a tour of Scentsy's facilities.

31.     Scentsy's manufacturing facility is not open to the public.  The only way to obtain a tour of the facility is to be an employee, consultant, or potential consultant.

32.     Scentsy further discovered that Palmer had previously ordered Scentsy's products through one of Scentsy's consultants.

33.     In approximately October, 2008, Defendant Palmer further represented to Mr. Taylor that he had "found out" who built Scentsy's custom built wax dispensing machine and packaging system and that he intended to buy one.  Defendant Palmer showed Mr. Taylor and others a photograph of the machine on his laptop computer.  Defendant Palmer indicated that the machine is scheduled to be delivered to him in late December or early January.

34.     Upon information and belief, Defendant Duff, both individually and on behalf of Performance Mfg. intentionally and wrongfully disclosed Scentsy's confidential information with Defendant Palmer, including but not limited to Scentsy's secret formula for its fragrance bars.

35.     The timeline and facts now known to Scentsy reveal that, after Defendant Palmer received Scentsy's formula for its fragrance bars, the Rimports fragrance bars sold at Wal-Mart stores in Utah became of similar quality as Scentsy's fragrance bars.  Prior to this time, the Rimports fragrance bars separated in the packaging and did not melt evenly.

36.     Many of the Rimports warmers currently being sold at Wal-Mart stores in Utah are not UL listed, meaning they have not been tested for compliance with public safety

requirements. Moreover, the electrical cord contained within the Rimports warmers is not insulated for heat. Rather, the cord is merely knotted within the ceramic warmer and the cord and knot are exposed to the heat generated by the bulb to melt the wax.

37.     Rimports and Defendant Palmer specifically intend that the Rimports warmers and fragrance bars currently being sold at Wal-Mart trade off and illicitly benefit from the brand, good will and reputation of the Scentsy company, warmers and fragrance bars.

38.     The Rimports warmers and fragrance bars and their overall design, packaging and presentation imitate the unique brand developed by Scentsy. For example, the packaging and design of Rimports' warmers use and emphasize "*Scents*" in their trade name to benefit from the well-known "*Scentsy*" brand and mark. The Rimports' packaging also blatantly trades off the well-known Scentsy "warm, enliven, inspire" slogan, advertising that its products "warm, enliven and inspire both heart and home."

39.     In addition, the packaging of Rimports' warmers allows the consumer to see directly to the warmers themselves, which imitate the well-known shape, size, color and design of Scentsy warmers. For example, Rimports is selling a warmer at Wal-Mart referred to as the "Desert Sand Hearth," a true and correct photograph of which is attached as Exhibit D. This product is a replica of, and substantially similar to, the "Sandstone" warmer in which Scentsy holds a registered copyright. A true and correct copy of this copyright registration certificate is attached as Exhibit E.

40.     As a result of Performance Mfg.'s and Rimports' actions, Scentsy consultants and consumers have been and are likely to continue to be confused as to whether "Scentsationals" warmers and fragrance bars are affiliated, connected, sponsored, endorsed,

approved, or associated with Scentsy, and as to whether Scentsy warmers and fragrance bars are now being sold at Wal-Mart stores.

41.     Scentsy is losing the good faith and trust of its consultants, many of whom are contacting Scentsy and expressing their confusion, dismay and now distrust in Scentsy for allegedly selling its products at Wal-Mart for a lower price.

42.     The unsafe nature of the Rimports warmers presents the potential for further harm to Scentsy.  An accident or recall related to Rimports' warmers would taint, potentially irreparably, the perceived safety of Scentsy products.

43.     Scentsy has made written demand upon Wal-Mart and Rimports to cease the sale of the Rimports warmers and fragrance bars.  A copy of this demand letter is attached hereto as Exhibit F.  To date, both Wal-Mart and Rimports have refused to remove the Rimports warmers and fragrance bars from the retail market.

44.     As a result of Defendants' actions, both individually and collectively, Scentsy is suffering harm which is immeasurable, irreparable and potentially catastrophic, including, but not limited to, harm to its reputation, good will, trust and relationship with its consultants and consumers.

## COUNT ONE
### *Violation of Idaho Trade Secrets Act*
### *(Against Defendant Performance Mfg. & Mike Duff)*

45.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 44 inclusive.

46.     The design of the custom built wax dispensing and packaging machines known as "Alice" and "Fred" is a trade secret of Scentsy and/or the compilation of the trade secrets of Scentsy.

47.     Scentsy's secret formula for its fragrance bars constitutes a trade secret.

48.     The foregoing acts of Defendant Performance Mfg. constitute misappropriation of Scentsy's trade secrets in violation of the Idaho Trade Secrets Act, Idaho Code §§ 48-801, et seq.

49.     As a result of Defendants' wrongful conduct, Scentsy has been and continues to be damaged in a manner that cannot be fully measured or compensated in economic terms and Defendants' unlawful conduct will continue (together with the damage to Scentsy) unless and until enjoined by this Court.

50.     Defendants' misappropriation of Scentsy's trade secrets is and has been willful and malicious, entitling Scentsy to an award of actual damages, statutory exemplary damages, and injunctive relief pursuant to applicable law.  Scentsy further reserves the right to seek leave of court to amend this Complaint to include a claim for punitive damages pursuant to Idaho Code § 6-1604.

## COUNT TWO
### *Unfair Competition*
### *(Against Defendant Rimports)*

51.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 50, inclusive.

52.     The foregoing acts of Defendants constitutes unfair competition in that Defendants improperly accessed and obtained used, Scentsy's proprietary, confidential and trade secret information to gain an unfair competitive advantage in the relevant market.

53.     As a result of Defendants' unlawful conduct, Scentsy has been and continues to be damaged in a manner that may not be able to be fully measured or compensated in economic terms, but in any event exceeds $10,000.00.

**COUNT THREE**
*Civil Conspiracy*
*(Against All Defendants)*

54.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 53, inclusive.

55.     The foregoing acts of Defendants constitute a civil conspiracy under Idaho law in that Performance Mfg. and Rimports agreed, conspired and/or engaged in concerted action to unfairly compete with Scentsy and to access, steal, misappropriate, and otherwise unlawfully obtain and use Scentsy's proprietary, confidential, and trade secret information in violation of applicable federal and Idaho civil and criminal law, including, but not limited to, Idaho Code §§ 48-801, et seq. (Trade Secrets), 48-101 et seq (Unfair Competition).

56.     As a result of Defendants' unlawful conduct, Scentsy has been and continues to be damaged in a manner that may not be able to be fully measured or compensated in economic terms, but in any event exceeds $10,000.00.

## COUNT FOUR
### *Trade Dress Infringement*
### *(Against Defendant Rimports)*

57.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 56, inclusive.

58.     Scentsy owns common law rights in the SCENTSY mark, brand and trade dress of its products and their packaging that date back to 2004.

59.     The Scentsy name, brand and packaging are inherently distinctive and have acquired distinctiveness through secondary meaning.

60.     The distinctive nature of Scentsy's warmer and fragrance bar packaging is non-functional.

61.     The Scentsy name, brand, packaging and products have been in the marketplace well prior to Rimports' "Scentsationals" warmers and fragrance bars.

62.     At all times relevant, Defendant Rimports exercised ownership or control over the "Scentsationals" name, designs, products, and packaging, and knowingly cooperated in and/or induced, encouraged, enabled or aided the infringement of Scentsy's trademark and trade dress rights in the "Scentsationals" name, designs, products, and packaging.

63.     Defendant Rimports' use of Scentsy's marks and trade dress in interstate commerce is likely to cause consumer confusion or to cause mistake or to deceive as to the origin of the "Scentsationals" warmers and fragrance bars and as to their affiliation, connection, or association with and/or endorsement or approval by Scentsy.

64.     The foregoing acts of Defendant Rimports constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a), and/or vicarious or contributory infringement of Scentsy's rights under 15 U.S.C. § 1125(a).

65.     Defendant Rimports has engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of Scentsy's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

66.     Scentsy has been damaged and will continue to be damaged, and Defendant Rimports has been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

In addition, Defendant Rimports' conduct described herein has caused and, if not enjoined will continue to cause, irreparable damage to Scentsy's rights in its marks and trade dress, and to the business, positive reputation and goodwill of Scentsy, which cannot be adequately compensated solely by monetary damages.  Scentsy therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT FIVE
### *Copyright Infringement*
### *(Against Defendant Rimports and Palmer)*

67.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 66, inclusive.

68.     Scentsy has the registered copyright in its Sandstone warmer as set forth on Exhibit E, Registration No. VA1-641-752.

69.     Defendants Rimports and Palmer had access to Scentsy's Sandstone warmer.

70.     Defendants Rimports and Palmer copied, displayed and/or created derivative works from Scentsy's Sandstone warmer.

71.     Defendants Rimports' and Palmer's Desert Sand Hearth warmer is substantially similar to Scentsy's original copyright-protected Sandstone warmer.

72.     Defendants Palmer and Rimports are not licensed or authorized by Scentsy to use its copyrighted works.

73.     At all times relevant, Defendants Palmer and Rimports obtained direct financial benefit from the infringement and had the right and ability to control the infringing conduct, and/or intentionally induced, encouraged, caused or materially contributed to the infringement.

74.     The foregoing acts of Defendants Rimports and Palmer constitute direct infringement, vicarious infringement and/or contributory infringement of Scentsy's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

75.     Scentsy has been and will continue to be damaged, and Defendants Rimports and Palmer have been unjustly enriched, as a result of this unlawful infringement of Scentsy's copyrighted works in an amount to be proven at trial.

76.     Upon information and belief, Rimports' and Palmer's actions were intentional, willful, wanton, and performed in disregard of the rights of Scentsy.

## COUNT SIX
### Breach of Contract
### (Against Defendant Performance Mfg.)

77.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 76, inclusive.

78.     Performance Mfg. agreed in writing that Scentsy's confidential information would remain confidential and Performance Mfg. would not disclose this confidential information.

79.     Based on the foregoing, Performance Mfg. has breached the contract.  This breach is willful and malicious.

80.     Scentsy has been and will continue to be damaged as a result of Performance Mfg.'s breach in an amount to be proven at trial.

## COUNT SEVEN
### *Fraud/Intentional Misrepresentation*
### *(Against Defendant Mike Duff)*

81.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 80, inclusive.

82.     Defendant Duff represented to individuals at Scentsy that he would not disclose Scentsy's confidential information to third parties and would use said confidential information solely for the purpose of manufacturing Scentsy's custom built wax dispensing and packaging systems known as Alice and Fred.

83.     Defendant Duff deliberately and willfully disclosed Scentsy's confidential information, including the design information related to Alice and Fred; Scentsy's secret recipe for its fragrance bars; and other confidential information.

84.     Scentsy relied on Defendant Duff's representations that he would not disclose said confidential information as a prerequisite to disclosing the information to Defendant Duff.

85.     As a result of Defendant Duff's wrongful actions, Scentsy has been damaged in an amount to be proven at trial.

## COUNT EIGHT
### *Fraud/Intentional Misrepresentation*
### *(Against Defendant Palmer)*

86.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 85, inclusive.

87.     In his efforts to unfairly compete with and obtain confidential information of Scentsy, Defendant Palmer deliberately traveled to Idaho and represented himself as needing a tour of the Scentsy manufacturing facility for a legitimate purpose that would not harm Scentsy's business.

88.     This representation was false and misleading as Defendant Palmer's only motive in obtaining a tour of Scentsy's facility was to gain as much information about Scentsy's business and confidential information as possible in order to manufacture copies of Scentsy's products and intellectual property for profit.

89.     Scentsy relied on Defendant Palmer's misrepresentations and would not have provided Mr. Palmer access to its manufacturing facilities absent the misrepresentation.

90.     As a result of Defendant Palmer's wrongful, deliberate and egregious actions, Scentsy has been damaged in an amount to be proven at trial.

## COUNT NINE
### *Imposition Of A Constructive Trust Upon Illegal Proceeds And Profits*
### *(Against All Defendants)*

91.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 90, inclusive.

92.     By virtue of Defendants' wrongful conduct, upon information and belief, Defendants have illegally received monies and profits that rightfully belong to Scentsy.

93.     Upon information and belief, Defendants hold the illegally received money and profits in the form of bank accounts, real property, or personal property that can be located and traced.

94.     Defendants hold the money and profits they have illegally received as constructive trustees for the benefit of Scentsy.

### COUNT TEN
*Tortious Interference with Contract – Confidentiality Agreement*
*(Against Defendants Rimports and Palmer)*

95.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 95 inclusive.

96.     The foregoing acts of Defendants Rimports and Palmer constitute tortious interference with the Confidentiality Agreement between Defendant Scentsy and Performance Mfg. in that Defendants Rimports and Palmer had actual or constructive knowledge of the agreement and intentionally interfered with the contract and caused or induced Performance Mfg.'s breach of his agreement with Scentsy.

97.     As a result of Defendants' unlawful interference, Scentsy has been and continues to be damaged in a manner that may not be able to be fully measured or compensated in economic terms, but in any event exceeds $10,000.00.

### COUNT ELEVEN
*Unjust Enrichment*
*(Against all Defendants)*

98.     Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 97, inclusive.

99.     By virtue of Defendant Rimports and Palmer's wrongful conduct, they have been unjustly enriched in the form of money and profits from the sale of the Scentsationals brand warmers and wax bars.

100.    By virtue of Defendant Performance Mfg.'s and Duff's wrongful conduct, they have been unjustly enriched in the form of money and profits from the sale or potential sale of the formula to Scentsy fragrance bars and the custom built wax dispensing machine to Rimports.

101.    Defendants have been damaged by the amount of said unjust enrichment, which is currently unknown but believed to be in excess of $10,000.00.

## IV.    ATTORNEY'S FEES

102.    As a result of Defendants' conduct, Scentsy has been required to retain the services of Perkins Coie LLP and is thereby entitled to recover attorneys' fees and costs incurred in the pursuit of this matter. The sum of $20,000 is a reasonable attorneys' fee in the event this matter is uncontested and taken by default.

## V.    PRAYER FOR RELIEF

WHEREFORE, Scentsy respectfully prays that the Court grant relief to Plaintiff as follows:

(1)    An award of compensatory damages in favor or Scentsy and against Defendants, including consequential and incidental damages, pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 504(b) and as otherwise permitted by law; in an amount to be proven at trial, which exceeds $10,000.00;

(2)    At Scentsy's election, an award of statutory damages pursuant to 17 U.S.C. § 504(c) and as otherwise permitted by law;

(3)     An award of increased or exemplary damages in favor or Scentsy and against Defendants pursuant to 15 U.S.C. § 1117 including, but not limited to, treble damages or treble profits, whichever is greater, and as otherwise as allowed by law;

(4)     An award of nominal damages in favor of Scentsy and against Defendants in an amount to be proven at trial;

(5)     An accounting and award to Scentsy of Defendants' gains, profits, or unjust enrichment pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 504(b) and otherwise permitted by law in an amount to proven at trial;

(6)     An award of attorney's fees and costs in favor or Scentsy and against Defendants pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505 and as otherwise permitted by law;

(7)     An award of prejudgment and post-judgment interest at the maximum rate allowed by law in favor or Scentsy and against Defendants;

(8)     A preliminary and permanent injunction enjoining Defendants, their subsidiaries, affiliates, their members, managers, directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, from, among other things:

> (a)     Accessing or attempting to access or acquire any of Scentsy's proprietary, confidential and/or trade secret information, including but not limited to data which was and has been maintained on Scentsy's computer equipment and/or systems;
>
> (b)     Reviewing, copying, disclosing, divulging, making use of, capitalizing in any way on, developing, marketing, or selling products, services or offerings based upon, or otherwise appropriating (or inducing or enabling others to do so) any of Scentsy's proprietary,

confidential, and/or trade secret information, which Defendants have or have had in their possession, custody, or control;

(c)     Misappropriating, acquiring, or using any of Scentsy's trade secrets;

(d)     Copying, distributing, displaying, creating derivative works or otherwise using protected elements of Scentsy's copyrighted works, including, but not limited to, Scentsy's wickless candle warmers;

(e)     Using the Scentsy name, brand, trade dress or any other marks or symbols that are confusingly similar to marks owned by Scentsy in connection with any goods and services marketed, advertised or sold in the marketplaces for fragrant, perfumed and scented wickless candles, wax bars and wax chips; scented and perfumed air, room and car fresheners and freshener sprays; electric decorative burners and warmers for scented wax; and retail, sales, promotion, commercial, advertising, membership, computerized online ordering, in-home shopping and multi-level business marketing services related to any of these marketplaces; and

(f)     Unfairly competing with Scentsy in any manner.

(9)     An order declaring that Defendants hold in trust, as constructive trustees for the benefit of Scentsy, its illegal profits obtained from its unlawful and tortious conduct, and requiring Defendants to provide Scentsy a full and complete accounting of all amounts due and owing to Scentsy as a result of Defendants' illegal activities; and

(10)     Such other and additional relief to Scentsy as the Court deems just and proper.

## VI.     DEMAND FOR JURY TRIAL

Plaintiff Scentsy hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

DATED: December _19_, 2008.

PERKINS COIE LLP

By: _Shelly Cozakos_

Shelly H. Cozakos, Of the Firm
*Attorneys for Plaintiff*

## VERIFICATION

| STATE OF | Idaho | ) |
|---|---|---|
| | | : ss. |
| County of | Ada | ) |

R. Orville Thompson, being first duly sworn upon oath, deposes and says:

That I am the President and CEO of Scentsy, Inc., the Plaintiff herein, and as such, I am personally familiar with the matters stated herein.

That I have read the foregoing, know the contents thereof, and based upon my own personal knowledge and belief, believe the same to be true and correct.

DATED: _12 · 19 · 2008_

SUBSCRIBED AND SWORN TO before me on December _19_, 2008.

_____

Notary Public for _____
Residing at: _2217 W. Preston_
My Commission Expires: _12/8/2014_

(SEAL)

*[Notary seal: JILL LESLIE, NOTARY PUBLIC, STATE OF IDAHO]*

VERIFIED COMPLAINT AND DEMAND FOR JURY
TRIAL - 21
60366-0009/LEGAL15087742.1

# EXHIBIT A

This Agreement is entered into effective as of _1/8/07_ between _SCENTSY_ (the "Company") and _MICROCERAMIC MFG_ corporation ("Recipient").

Recipient is acting as an expert advising the Company in connection with a _CANDLE MANUFACTURING MACHINE_ and for that purpose the Company may make certain Confidential Information (as defined below) available to the Recipient (the "Purpose"). As a condition to, and in consideration of, the Company's furnishing of Confidential Information to the Recipient, the Recipient agrees to the restrictions and undertakings contained in this Agreement.

Recipient agrees that all information disclosed by the Company to Recipient, including any such information disclosed prior to the date of this Agreement, and including without limitation information acquired by Recipient in writing, orally or by inspection of the Company's property, relating to (without limitation) the Company's prototypes, samples, technical data, trade secrets, know-how, actual and anticipated research, developments or products, product plans, services, software, inventions, processes, discoveries, formulas, architectures, concepts, ideas, designs, drawings, personnel, customers, markets, marketing plans, distribution methods, financial information, sales or programming matter, compositions, drawings, diagrams, computer programs, studies, work in process, visual demonstrations, manufacturing plans, confidential information disclosed to the Company by third parties, and other data, whether oral, written, graphic, or electronic form shall be considered "Confidential Information". However, Confidential Information shall not include information which, as Recipient can prove in written evidence, (i) is now or subsequently becomes generally known or available by publication, commercial use or otherwise, through no fault of Recipient, (ii) is known by Recipient at the time of disclosure, or (iii) is lawfully obtained by Recipient without violation of a confidentiality obligation.

Recipient agrees (i) to use Confidential Information solely for the Purpose; (ii) to use all possible means to maintain the Confidential Information in strict confidence, and at least those measures that it employs for the protection of its own confidential information, but in any event not less than a reasonable degree of care, (iii) to disclose Confidential Information only to Recipient's employees who are required to have the information for the Purpose and have previously signed an agreement in content similar to the provisions hereof; and (iv) to immediately notify in writing the Company in the event of any unauthorized use or disclosure of the Confidential Information. Recipient shall not reverse engineer, disassemble, decompile or copy any software or other tangible objects which embody the Confidential Information, nor export or re-export or otherwise transmit, directly or indirectly, any Confidential Information, or the direct product of Confidential Information. except with the applicable government export approvals or export permits.

All Confidential Information and all of the Company's trademarks remain the property of the Company and no license or other rights in the Confidential Information or such trademarks are granted hereby, except as expressly provided above. This Agreement does not constitute a joint venture or other such business agreement. All information is provided "as is" and without any warranty, express, implied, or otherwise, regarding its accuracy or performance.

Recipient agrees to return to the Company immediately upon the Company's written request all documents and other tangible objects containing or representing the Confidential Information and all copies thereof which are in the possession of Recipient, including but not

limited to all computer programs, documentation, notes, plans and drawings, and any reports, presentations, memorandums and other similar work made by Recipient in connection with or relating to the Company or the Confidential Information. With respect to Confidential Information stored in electronic form, Recipient shall delete all such Confidential Information from its systems and shall confirm in a writing signed by an authorized representative of Recipient, that all Confidential Information has been deleted.

Recipient hereby acknowledges that unauthorized disclosure or use of Confidential Information could cause irreparable harm and significant injury, which may be difficult to ascertain. Accordingly, Recipient agrees that the Company shall have the right to seek and obtain immediate injunctive relief from breaches of this Agreement, in addition to any other rights and remedies it may have.

Recipient's obligations hereunder shall survive termination or expiration of this agreement until such time as all Confidential Information disclosed hereunder becomes publicly known and made generally available through no action or inaction of Recipient.

This Agreement shall bind and inure to the benefit of the parties hereto and their successors and assigns, except that Confidential Information and the rights and obligations under this Agreement may not be assigned by Recipient without prior written consent of the Company. This document contains the entire agreement between the parties with respect to the subject matter hereof, and may not be amended, nor any obligation waived, except by a writing signed by both parties hereto. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of _Idaho_ excluding that body of law pertaining to conflict of law, and the parties hereto agree to submit to the exclusive jurisdiction of the courts of _Idaho_ any disputes arising out of the subject matter.

**UNDERSTOOD AND AGREED:**

By: _____          By: _____

Name and Title: _____          Name and Title: _____

# EXHIBIT B

# Scentsy, Inc.

3876 E Lanark st.

Meridian, ID 83642  USA

tel: 208-422-0871 fax: 208-888-4306

Email: kpreece@scentsy.com

## Purchase Order

**Supplier:** Performance MFG

23425 N. 39th Drive Ste. 104-5

Glendale, AZ 85310

Ph 949-715-7800

Fax 623-748-8853

**DATE:** January 18, 2008

**TERM:** FOB ORIGIN

**DELIVERY ON/ABOUT:** May 9, 2008

**PO NO: KP11808**

| ITEM NO. | DESCRIPTION | Y ( PCS ) | UNIT-PRICE (USD) | TOTAL AMOUNT (USD) |
|---|---|---|---|---|
| Model CDC P-8E Packaging system | Custom built wax dispensing and packaging system | 1 | US$198,000.00 | US$198,000.00 |
| | | | | |
| TOTAL : | | 1 | | US$198,000.00 |

**GENERAL NOTES:**

1) Seller guarantees that field service support personnel will be dispatch within 24hrs of request by buyer's authorized personnel.

2) Buyer reserves the right to inspect and/or qualify for operation equipment purchased in the agreement prior to shipment

3) Buyer is not responsible for excess freight charges due to the failure of Supplier to use the carrier and/or method specified, or expedite charges not requested or approved by Buyer. Excess freight charges may be deducted from Supplier's invoices prior to payment.

4) Shipment must consist of a complete and usage unit to qualify for payment as negotiated

**5)** Supplier to provide two full sets of operation and maintenance manuals, including schematics and spare parts list, at no charge to Buyer. Buyer may reproduce such information/manuals to the extent necessary or desirable for Buyer's in-house purposes.

**6)** Buyer may cancel this purchase order without obligation and with complete refund if one or all of the following conditions are present: Supplier unable to provide working machine as represented for signoff, machine can not perform consistantly at the represented PPM, Excessive shipping delay exsists, or Supplier fails to meet Buyer satisfaction after scheduled delivery date expires.

**7)** Supplier will inform Buyer of all stages of manufacturing which include but are not limited to: exceptions, delays, modifications, timelines, or project scope changes in writing for buyer approval.

ACCEPTED BY:                                          Performance MFG

_Ol Thompson_

Orville Thomson, President                           AUTHORIZED SIGNATURE(S)

**EXHIBIT C**

# Scentsy, Inc.

3876 E Lanark st.
Meridian, ID 83642  USA
tel: 208-422-0871 fax: 208-888-4306
Email: kpreece@scentsy.com

## Purchase Order

Supplier: **Performance MFG**
23425 N. 39th Drive Ste. 104-5
Glendale, AZ 85310
Ph 949-715-7800
Fax 623-748-8853

**PO NO: KP81308**

DATE  8-13-08
TERM: FOB ORIGIN

**DELIVERY ON OR BEFORE:** October 13TH, 2008

| ITEM NO. | DESCRIPTION | QUANTITY ( PCS ) | UNIT-PRICE ( USD) | TOTAL AMOUNT ( USD) |
|---|---|---|---|---|
| Model CDC P-8E Packaging system | Custom built wax dispensing and packaging system for Scentsy, Inc. | 1 | US$285,600.00 | US$285,600.00 |
| | | | | |
| **TOTAL :** | | **1** | | **US$285,600.00** |

**GENERAL NOTES:**

1) Seller guarantees that field service support personnel will be dispatch within 24hrs hours of request by buyer's authorized personnel.

2) Buyer reserves the right to inspect and/or qualify for operation equipment purchased in the agreement prior to shipment.

3) Buyer is not responsible for excess freight charges due to the failure of Supplier to use the carrier and/or method specified, or expedite charges not requested or approved by Buyer. Excess freight charges may be deducted from Supplier's invoices prior to payment.

4) Shipment must consist of a complete and usable unit to qualify for payment as negotiated.

5) Supplier to provide two full sets of operation and maintenance manuals, including schematics and spare parts list, at no charge to Buyer. Buyer may reproduce such information/manuals to the extent necessary or desirable for Buyer's in-house purposes. Buyer reserves the right of ownership for all drawings, specifications, concepts, and intellectual property referred to in this purchase order agreement and subsiquent tool.

6) Buyer may cancel this purchase order without obligation and with complete refund if one or all of the following conditions are present: Supplier unable to provide working machine as represented for signoff, machine can not perform consistantly at the represented PPM, Excessive shipping delay exsists, or Supplier fails to meet Buyer satisfaction after scheduled delivery date expires.

7) Supplier will inform Buyer of all stages of manufacturing which include but are not limited to: exceptions, delays, modifications, timelines, or project scope changes in writing for buyer approval.

8) Initial onsite installation of unit will be at sellers expense and duration to consist of day(s) needed for expected output

9) On-site factory training to be provided by Seller, after installation, to the extent of competent operation of the unit refered to in this purchase order

10) Payment schedule to be 60% down, 30% prior to shipment, 10% net 30 after successful installation.

ACCEPTED BY:

*Othcompson*

Orville Thomson, President

Performance MFG

AUTHORIZED SIGNATURE(S)

**EXHIBIT D**







**EXHIBIT E**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VA 1-641-752

**Effective date of registration:**

October 10, 2008

## Title

**Title of Work:** Sandstone

## Completion/Publication

**Year of Completion:** 2006

**Date of 1st Publication:** March 1, 2006   **Nation of 1st Publication:** United States

## Author

**Author:** Scentsy, Inc.

**Author Created:** 2-D artwork, sculpture/3-D artwork

**Work made for hire:** Yes

**Citizen of:** United States   **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Scentsy, Inc.

149 South Adkins Way, Suite 101, Meridian, ID, 83642, United States

## Rights and Permissions

**Organization Name:** Scentsy, Inc.

**Name:** To whom it may concern

**Address:** 149 South Adkins Way

Suite 101

Median, ID 83642 United States

## Certification

**Name:** Richard R. Ronald

**Date:** October 10, 2008

IPN#:

Registration #:   VA0001641752

Service Request #:   1-107082992

Perkins Coie, LLP
To whom it may concern
1201 Third Avenue
Suite 4800
Seattle, WA 98101  United States

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VA 1-641-752

**Effective date of registration:**

October 10, 2008

## Title ─────────────────────────────────

Title of Work: Sandstone

## Completion/Publication ────────────────

Year of Completion: 2006

Date of 1st Publication: March 1, 2006          Nation of 1st Publication: United States

## Author ────────────────────────────────

Author: Scentsy, Inc.

Author Created: 2-D artwork, sculpture/3-D artwork

Work made for hire: Yes

Citizen of: United States          Domiciled in: United States

## Copyright claimant ────────────────────

Copyright Claimant: Scentsy, Inc.

149 South Adkins Way, Suite 101, Meridian, ID, 83642, United States

## Rights and Permissions ─────────────────

Organization Name: Scentsy, Inc.

Name: To whom it may concern

Address: 149 South Adkins Way

Suite 101

Median, ID 83642 United States

## Certification ─────────────────────────

Name: Richard R. Ronald

Date: October 10, 2008

IPN#:

Registration #:   VA0001641752

Service Request #:   1-107082992

Perkins Coie, LLP
To whom it may concern
1201 Third Avenue
Suite 4800
Seattle, WA 98101  United States



IPMaster (v1.7.3) - [Trademark 442 of 629]

File   Edit   Records   Utilities   Tools   Help

| Docket Number | 60366-6000.0000.US004 | | Attorney | Grace Han Stanton |
|---|---|---|---|---|
| Country | United States | | Agent | |
| Case Type | Copyright | | Client\Division | Scentsy, Inc. |
| Filing Type | National | | Current Owner | Scentsy, Inc. |
| Filing Number | | | Attorney 2 | |

# Sandstone

| Product(s) | Licenses | Other Number | Related Ids | Full Mark N |
|---|---|---|---|---|
| Filing Data | Filing Data 2 | Actions | Remarks | Class |

| | Action | Action Due | Completed | Notes |
|---|---|---|---|---|
| | 1 year to renewal | 3/1/2100 | | |
| | 1 month till renewal | 2/1/2101 | | |
| ▶ | Expiration Date | 3/1/2101 | | 95 years since date of first publication |
| | Renewal due | 3/1/2101 | | |
| * | | | | |

Created: 10/31/2008   Updated: 10/31/2008 10:36:01   By:

Start   Portal: My Pag...   LegalKEY Attor...   3 Microsoft O...   IPMaster

**EXHIBIT F**

December 4, 2008


Mr. Thomas A. Mars
Walmart General Counsel
702 SW 8th Street
Bentonville, AR 72716-8611
Fax: 479-277-5991

Mr. Jeff W. Palmer
Rimports (USA)
1460 North 1600 West
Mapleton, UT 84664-3317
Fax: 801-491-6298

Re:    Scentsy, Inc. claims against Rimports, LLC, Walmart

Dear Gentlemen,

I am the General Legal Counsel for Scentsy, Inc. ("Scentsy"). I am writing because of concerns
we have regarding wax warmers and scented wax that are currently being sold by Rimports
(USA) LLC ("Rimports") in a number of Wal-Mart stores. As set forth in more detail below, we
believe that certain of these warmers are being sold in violation of our intellectual property
rights, that they present potential dangers to the public and damage to the marketability and
acceptability of our warmers, and, further, that Rimports is engaging in unfair competition by
failing to comply with U.S. federal legal labeling requirements on its packaging.

Scentsy is the owner of all intellectual property rights in Scentsy Warmers (and other Scentsy
products) and the Scentsy brand, and we take infringement of these rights seriously.  The
"ScentSationals" wax warmers and products manufactured by Rimports and sold by Wal-Mart
are *direct copies* from Scentsy and violate our intellectual rights and the rights of fair
competition.  The ScentSationals "Desert Sand Hearth" warmer, for example, is a near exact
copy of our Scentsy Sandstone Warmer.  This is an actionable infringement of our copyrights
(Copyright Registration VA 1-641-752).  Beyond copyrights, the name, packaging and even
slogan (*warm, enliven,* and *inspire*) of ScentSationals wax warmers unlawfully trade on
Scentsy's goodwill and reputation.

Further, we believe that the warmers that are being manufactured for Rimports and that are being
sold through Wal-Mart are unsafe and have the potential for causing harm and economic
damages to us. Specifically, according to Underwriters Laboratories ("UL"), these warmers are
not UL listed as entire appliances, and it appears that the light bulb receptacles in these warmers
are not UL listed electrical components. At least the models (#SC-102, #SC-103, #SC-105 and
#SC-108 ) that we have examined do not have any UL listing or labeling. Moreover, the
electrical cord contained within the warming appliance is not insulated for heat. Rather, the cord
is merely knotted within the ceramic warmer and the cord and knot are exposed to the heat

---

*Scentsy, Inc., 3876 E. Lanark, Meridian, Idaho 83642  --  208-855-0617  Fax 208-888-4306*

generated by the bulb to melt the wax. We believe these problems may be dangerous and result in a recall that will damage the marketability and acceptability of Scentsy products because the ScentSationals products imitate our warmers and brand.

In addition, we have obtained several containers of wax that are being sold by Rimports through Wal-Mart stores and believe that they are improperly labeled in violation of the U.S. Fair Packaging and Labeling Act. The labels on the containers do not indicate the identity of the product; the name and place of business of the manufacturer, packer, or distributor; and the net quantity of contents. In addition, these labels do not indicate the country of origin. Hence, not only has Rimports violated our rights by copying the size, dimensions, and characteristics of our packaging, colors, and the unique characteristics of our wax, it is also engaging in unfair competition by selling product in competition with Scentsy that does not meet the federal requirements while Scentsy and other competitors are in full compliance with the laws.

**Scentsy demands that you immediately cease and desist the display, promotion, manufacture and sale of ScentSationals wax warmers and related products.**

We expect your immediate attention to this matter and immediate compliance.

In addition, Scentsy demands that, within no more than five (5) calendar days from the date of this letter, you provide the following:

1.    Written confirmation of your compliance with Scentsy's cease and desist demand.

2.    An accounting of all ScentSationals wax warmers and other products manufactured to date, sold to date, and in your inventory as of this date.

3.    An accounting of your gross sales from all ScentSationals wax warmers and other products sold to date.

4.    Written confirmation that you will not copy or use Scentsy's works, marks, trade dress, or brand in the future without Scentsy's express written authorization and that you will implement reasonable measures to ensure that unauthorized copying or use of Scentsy's works, marks, trade dress, or brand does not recur.

If sales do not cease immediately, Scentsy shall take legal action to protect our rights and recover our damages. We specifically reserve all rights and remedies in law and equity with respect to this matter.


Best regards,


Philip E. Broadbent
Scentsy General Counsel
(208) 855-5520

Cc:    Elizabeth L. McDougall, Esq., Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

Melanie G. Rubocki, Esq., Perkins Coie, LLP
251 Eat Front Street
Boise, ID 83702-7310

Ryan Hester, Walmart Store Manager
949 W. Grassland Drive
American Fork, UT 84003

Amy Teitchert, Walmart Store Manager
221 West Parrish Lane
Centerville, UT 84014

Chris Berquist, Walmart Store Manager
1632 N. 2000 W.
Clinton, UT 84015

John Hartey, Walmart Store Manager
1360 E. Draper Parkway
Draper, UT 84020

Jeri Goodman, Walmart Store Manager
534 Harrisville Road
Harrisville, UT 84404

Bryce Blackburn, Walmart Store Manager
1356 E. Highway 193
Layton, UT 84040

Craig Allred, Walmart Store Manager
745 West Hill Field Road
Layton, UT 84041

Kevin Schultz, Walmart Store Manager
585 N State Street
North Layton, UT 84042

Jessica Brooks, Walmart Store Manager
7250 South Union Park Ave
Midvale, UT 84047

Clint Harris, Walmart Store Manager
1550 North Main
North Logan, UT 84341

David Wilhelm, Walmart Store Manager
1355 S. Sandhill Road
Orem, UT 84058

Michael Donahue, Walmart Store Manager
6545 North Landmark Drive
Park City, UT 84098

Eva Okey, Walmart Store Manager
1052 South Turf Farm Road
Payson, UT 84651

Bob Pierceson, Walmart Store Manager
1200 South Commerce Way
Perry, UT 84302

Chris Phillips, Walmart Store Manager
255 South Highway 55
Price, UT 84501

Bruce Moffit, Walmart Store Manager
10 East 1300 South
Richard, UT 84701

Jason Allred, Walmart Store Manager
4848 S. 900 W. Street
Riverdale, UT 84405

Scott Trudo, Walmart Store Manager
13502 South Hamilton View Rd
Riverton, UT 84065

Roger Daniels, Walmart Store Manager
350 West Hope Avenue
Salt Lake City, UT 84115

Kyle Rigby, Walmart Store Manager
4627 S. 900 E.
Salt Lake City, UT 84117

Kurt Gail, Walmart Store Manager
11328 S. Jordan Gateway Rd
South Jordan, UT 84095

Nathan Maerk, Walmart Store Manager
3706 W. 9800 S.
South Jordan, UT 84095

Kelly Kirby, Walmart Store Manager
1710 Skyline Drive
South Ogden, UT 84405

Lannette Justice, Walmart Store Manager
660 S. 1750 W.
Springville, UT 84663

Mike Kvnevold, Walmart Store Manager
2610 South Pioneer Road
St. George, UT 84790

Rick Jensen, Walmart Store Manager
2228 W. 1700 S
Syracuse, UT 84075

Kevin Smith, Walmart Store Manager
5469 S. Redwood Rd
Taylorsville, UT 84123

Chris Connely, Walmart Store Manager
1851 West Hwy 40
Vernal, UT 84078

Kurt Harbon, Walmart Store Manager
625 W. Telegraph St
Washington, UT 84780

Wayne Chamboon, Walmart Store Manager
7671 S. 3800 W.
West Jordan, UT84084

Mike Kiley, Walmart Store Manager
4570 S. 4000 W.
West Valley City, UT 84120

Brad Petersen, Walmart Store Manager
2675 W. 6200 S.
West Valley City, UT 84118