IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., ) | |
| Plaintiff, ) | Case No. CV08-553-S-EJL |
| vs. ) | MEMORANDUM ORDER |
| PERFORMANCE MANUFACTURING, INC., ) et al., ) | |
| Defendants. ) | |

Pending before the Court in the above-entitled matter are Plaintiff's motion for a preliminary injunction and Defendants' motion to dismiss. On January 15, 2009 the Court heard oral argument from the parties on the motions. The matters are now ripe for the Court's consideration. Having reviewed the entire record herein, the Court finds as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Scentsy, Inc. ("Scentsy") is an Idaho corporation with its principal place of business in Meridian, Idaho. Defendant Performance Manufacturing, Inc. ("PMI"), is a Georgia corporation with its principal place of business in Buford, Georgia. Defendant Mike Duff is a shareholder of PMI residing in Laguna Beach, California. Defendant Rimports, LLC ("Rimports") is a Utah limited liability company with its principal place of business in Provo, Utah. The owner of Rimports, Jeffery W. Palmer, a resident of Utah County, Utah, and named as a Defendant in this action.

Scentsy is in the business of manufacturing and selling wickless candle warmers and fragrance bars under the Scentsy brand. PMI is in the business of manufacturing custom built machines. In 2005, Scentsy contacted PMI to contract for the manufacturing of a machine to package its wax bars. On January 18, 2008, PMI delivered the first such machine. Thereafter, the parties undertook efforts to make changes to the design of the first machine and PMI manufactured and delivered a second machine on approximately August

MEMORANDUM ORDER - Page 1

13, 2008. During the designing of these machines, Scentsy argues, PMI signed a confidentiality agreement that requires the parties to maintain the confidentiality of the trade secrets that Scentsy claims it had to disclose to PMI in order for the machines to be manufactured.

In the fall of 2008, Scentsy alleges it learned that certain Wal-Mart stores in Utah were selling warmers and wax products similar to the Scentsy brand. These products were manufactured by Rimports under the name "ScentSationals." The Rimports products overall design, packaging, and presentation, Scentsy alleges, imitate the unique brand developed by Scentsy which has caused losses to Scentsy and customer confusion. Scentsy also discovered that Mr. Palmer had ordered Scentsy's products from a consultant in Utah and, in October of 2008, personally visited and partially toured Scentsy's Meridian, Idaho manufacturing facility. In addition, Scentsy learned that Mr. Palmer intended to buy a machine from PMI that used the same design which, Scentsy alleges, will reveal their trade secrets in violation of the confidentiality agreement it had with PMI.

As a result of the foregoing, Scentsy filed the complaint in this case alleging: violation of Idaho Trade Secrets Act against PMI and Mr. Duff, unfair competition against Rimports, civil conspiracy against all Defendants, trade dress infringement against Rimports, copyright infringement against Rimports and Mr. Palmer, breach of contract against PMI, fraud/intentional misrepresentation against Mr. Duff and Mr. Palmer, imposition of a constructive trust upon illegal proceeds and profits against all Defendants, tortious interference with contract against Rimports and Pamler, and unjust enrichment against all Defendants. (Dkt. No. 1). Scentsy also filed a motion for temporary restraining order and preliminary injunction. (Dkt. No. 3). Chief District Court Judge B. Lynn Winmill held a hearing on the motion and issued an order granting the motion for temporary restraining order for ten days and setting a hearing on the motion for preliminary injunction before this Court and ordered further briefing. (Dkt. No. 25). Defendants Rimports and Mr. Palmer then filed the instant motion to dismiss. (Dkt. No. 32). This Court took up both motions at

the January 15, 2009 hearing.  The Court will address the motions in turn starting with the motion to dismiss.

## DISCUSSION

I.       Defendants' Rimports and Mr. Palmer's Motion to Dismiss

      A.       Standard of Law

In a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of proof to show that jurisdiction is appropriate and that the Court has personal jurisdiction over the defendants.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001);  National Union Fire Insurance Co. v. Aerohawk Aviation, Inc., 259 F. Supp. 2d 1096, 1101 (D. Idaho 2003).  "'[W]hen a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'"[1] Doe, 248 F.3d at 922 (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 11995) (citations omitted).  "Where not directly controverted, a plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss."   National Union Fire, 259 F. Supp. 2d at 1101.  Therefore, the motion to dismiss will be decided on written submissions, with the facts accepted as presented by the plaintiff and any factual disputes being resolved in Scentsy's favor.  See Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  "The written materials may consist of the pleadings, declarations, affidavits, deposition testimony, exhibits or other evidence."  Chandler v. Roy, 985 F.Supp. 1205, 1209 n. 2 (D. Ariz. 1997) (citing Ballard, 65 F.3d at 1498; Data Disc, Ind. v. Systems Tech. Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977); and Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 268 (9th Cir. 1995)).

Personal jurisdiction over both parties is required before a court may decide a case in controversy.  U.S. Const. Amend. XIV.  Two forms of personal jurisdiction exist - general and specific.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984).  In order

---

[1] Here the Court held a hearing but only took argument, not evidence, from counsel.

to exercise either type of personal jurisdiction, the state's long-arm statute must be satisfied and the exercise of personal jurisdiction must comply with due process.  <u>See</u> <u>State of Idaho v. M.A. Hanna Co.</u>, 819 F. Supp. 1464 (D. Idaho 1993).  The Idaho long-arm statute, as it relates to this case, enables Idaho courts to exercise personal jurisdiction over any person or company who are engaged in the "transaction of any business within this state" or  when a tortious act is committed within the state.  Idaho Code §5-514.  In adopting § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.  <u>Houghland Farms, Inc. v. Johnson</u>, 803 P.2d 978,  981 (Idaho 1990); <u>see also</u> <u>Lake</u>, 817 F.2d at 1420 (determining federal cases provide guidance in determining whether personal jurisdiction exists).  Thus, the Court need only determine whether asserting personal jurisdiction complies with due process.  <u>M.A. Hanna Co.</u>, 819 F.Supp. 1464.

In this case, only specific personal jurisdiction is at issue.  When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising "specific jurisdiction" over the defendant.  <u>Helicopteros</u>, 466 U.S. at  414 n. 8.  It is well established in the Ninth Circuit that three conditions must be met before a court may exercise specific personal jurisdiction over a nonresident defendant: (1) the nonresident defendant must purposefully conduct activities within the forum; (2) the claim must arise or result from forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  <u>Doe</u>, 248 F.3d at 923; <u>see also</u> <u>Ballard</u>, 65 F.3d at 1498.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476- 78 (1985).

B.      Specific Personal Jurisdiction Analysis

        1.      Purposeful Availment/Direction

        Under the first prong of the three part specific jurisdiction test, Scentsy must establish that Defendants purposefully availed itself or the privilege of conducting activities in Idaho or purposefully directed it activities toward Idaho.  Scentsy argues personal jurisdiction under Idaho's long-arm statute is appropriate because the Defendants committed a tort in Idaho by fraudulently misrepresenting themselves during their visit to Scentsy's manufacturing facility, infringing on their copyrighted works and trade dress, and related tortious claims all while Defendants knew Scentsy was located in Idaho and that their actions would cause harm to Scentsy in Idaho.  The Defendants maintain the conduct alleged by Scentsy is insufficient to conclude that the Defendants' purposefully directed actions to the forum state.

        The requirement that the defendant do some act purposefully to avail itself of the laws of the forum state ensures that a person is not hauled into court as the result of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. Burger King, 471 U.S. at 475.  Thus, the Court must examine whether Defendants' activities were directed purposefully toward the forum.  Id. at 2184.  "Purposeful availment, which satisfies the first part of the Ninth Circuit test, requires a finding that the defendant '[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'"  Doe, 248 F.3d at 923 (citing Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)).  However, " 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction."  Id. (citing McGlinchy v. Shell Chemical Co., 845 F.2d 802, 816 n. 9 (9th Cir. 1988) (quoting Burger King, 471 U.S. at 478).

        Incorporating the standards set forth in Burger King, the Ninth Circuit has expounded upon the requirements for purposeful availment, noting that purposeful direction of some act

having effect in the forum constitutes sufficient contact to exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require.  Doe, 248 F.3d at 923 (citing Haisten v. Grass Valley Medical Reimbursement Fund, LTD, 784 F.2d 1392,  1397 (9th Cir. 1986)).  In tort cases, the purposeful availment prong focuses on a purposeful direction analysis.  See, e.g., Schwarzenegger, 374 F.3d at 801-02.  This is true when either intentional or negligent tort claims are alleged.  See, e.g., Ziegler v. Indian River County, 64 F.3d 470, 473-74 (9th Cir.1995); Whalen v. National Occupational Health Strategies, LLC, 2006 WL 223741 (W.D. Wash. Jan 25, 2006).[2]

The Ninth Circuit employs the "effects test" in tort cases stating "[i]n tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state."  Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1322 n. 2 (9th Cir. 1998) (citing Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995)).  The "effects test" for tort cases was set forth in Calder v. Jones, 465 U.S. 783 (1984) where the Supreme Court held that personal jurisdiction can be based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered - and which the defendant knows is likely to be suffered - in the forum state."  Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1486 (9th Cir. 1993).  The "effects test" is another way of assessing the defendant's relevant contacts with the forum state as the defendant must still "purposefully avail" itself of the privilege of conducting activities within the forum state.  Wallace v. Herron, 778 F.2d 391 (7th Cir. 1985).  The Court finds the "effects test" is applicable to this case as the claims raised by Scentsy sound in tort.

---

[2]

We [the Ninth Circuit] often use the phrase "purposeful availment," in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts.  A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.

. . .

A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.

Schwarzenegger, 374 F.3d at 802 (citations omitted).

MEMORANDUM ORDER - Page 6

In applying the effects test, the majority of courts that have looked at this question have held that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." See IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 263-63 (3rd Cir. 1998). This Court agrees that it cannot automatically infer that the Defendants expressly aimed their tortious conduct at the forum state from the fact the Defendants knew Scentsy's primary place of business was Idaho. See Cybersell,Inc. v. Cybersell, Inc., 130 F.3d 414 (9th cir. 1997). Instead, there must be "something more" to demonstrate the Defendants directed their activity toward the forum state. See Panavision, 141 F.3d at 1322; Schwarzenegger, 374 F.3d at 802.

Applying these principles here, the Court finds Scentsy has satisfied the first prong in the jurisdictional analysis. The conduct of Defendants alleged by Scentsy demonstrates that these Defendants aimed their actions specifically towards Scentsy's products. Scentsy sells its products through consultants in many states. Defendants are competitors of Scentsy who currently sell their products at Wal-Mart stores in Utah. The sale of an allegedly infringing product by Defendants, even if the sale was not in Idaho, injures Scentsy in Idaho. The Defendants know Scentsy is located in Idaho as evidenced by Mr. Palmer's visit to the facility. The alleged tortious actions of the Defendants specifically aimed at and targeting Scentsy, a company known to be located in Idaho, is the "something more" required under the effects test to satisfy the purposeful availment requirement for specific, personal jurisdiction. Scentsy's allegations that the Defendants' actions singled out the Scentsy brand by purchasing its products, visiting its facility, and undertaking similar efforts to manufacture, produce, and sell a similar or identical product demonstrate that the Defendants had expressly aimed their intentional activities toward Scentsy in the forum state causing the alleged injuries to Scentsy in Idaho. For example, Scentsy alleges a the copyright infringement claim is in the nature of a tort. See Realsongs v. Gulf Broadcasting Corp., 824 F. Supp. 89, 91 (M. D. La. 1993); Business Trends Analysis v. Freedonai Group, Inc., 650 F. Supp. 1452, 1455 (S.D. N.Y. 1987). When a corporations copyright is infringed, the

corporation suffers harm in its primary place of business. <u>Panavision</u>, at 1321. Likewise, Scentsy's other claims allege facts that Defendants' activities were aimed at and targeted Scentsy in Idaho.

As such, the Court concludes that the alleged intentional actions by Defendants were expressly aimed and directed at the forum state and caused harm which the Defendants knew would be suffered in the forum state where Scentsy has its principal place of business. <u>Core-Vent Corp. v. Nobel Industries AB</u>, 11 F.3d 1482, 1486 (9th Cir. 1993). Accordingly, the Defendants conduct and connection with Idaho were such that they should have reasonably anticipated being sued in Idaho. <u>Thomas Jackson Publishing, Inc. v. Buckner</u>, 625 F. Supp 1044, 1046 (D. Neb. 1985); <u>Brayton Purcell, LLP v. Recordon & Recordon</u>, 361 F. Supp. 2d 1135 (N.D. Cal. 2005).

2.      <u>Claims Arising Out of Forum-Related Activities</u>

The second part of the test for specific personal jurisdiction directs that the Court determine whether the plaintiff's claims "arise out" of the defendants' forum-related activities. To do so, the Ninth Circuit has adopted a "but for" analysis. <u>See</u> <u>Ballard</u>, 65 F.3d at 1500 (citing <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990), reversed on other grounds, 499 U.S. 585 (1991)). Thus, specific personal jurisdiction is proper here only where "but for" Defendants' activities in Idaho, Scentsy's injuries would not have occurred.[3]

Scentsy's claims against Defendants are tort claims including, unfair competition, civil conspiracy, trade dress infringement, copyright infringement, fraud/intentional

---

[3] The Defendants argue that because none of their products were sold in Idaho, personal jurisdiction over Counts Four and Five cannot lie; citing <u>Amba Marketing Systems, Inc. v. Jobar Intern., Inc.</u>, 551 F.2d 784 (9th Cir. 1977) (applying Arizona's long-arm statute in an unfair competition, trademark/patent infringement, and false designation of origin case). In <u>Amba</u> the Ninth Circuit determined that the "mere fact that Amba may have suffered injury to its good will or reputation, dilution of the value of its trademark, and damages from expected profits lost as a result of Jobar....sale of the cheaper imitations in states other than Arizona seemingly would not suffice to invoke personal jurisdiction in Arizona." <u>Id.</u> at 788. The "absence of any showing that the injury-causing event occurred in Arizona" was dispositive to the court in <u>Amba</u>. <u>Id.</u> at 788, n. 4. Since the adoption of the "but for" test, however, the analysis in <u>Amba</u> requiring that the actual damage-causing event to occur in the forum state is no longer the law in the Ninth Circuit. <u>See</u> <u>Chandler v. Roy</u>, 985 F.Supp. 1205, 1213 n. 9 (D. Ariz. 1997) (citing <u>Amba</u>, 551 F.2d at 787). Accordingly, the Court applies the "but for" test to the allegations in this case.

MEMORANDUM ORDER - Page 8

misrepresentation, and imposition of a constructive trust upon illegal proceeds and profits, tortious interference with contract, and unjust enrichment. (Dkt. No. 1). These claims are derived from Scentsy's factual allegations discussed above that satisfied the Court's finding of purposeful availment/direction. Those same factual allegations give rise to the eight claims made against these Defendants. But for the alleged conduct of the Defendants in targeting the Scentsy brand, the alleged injuries to Scentsy would not have occurred. Accordingly, the Court finds that the claims here arise out of the Defendants' forum-related activities.

As to the copyright infringement claim in particular, Count Five of the complaint alleges the Defendants copied Scentsy "Sandstone" warmer, copyright registration number VA1-641-752, and sold its copy as their own "Desert Sand Hearth" warmer. The complaint alleges that Scentsy became aware of the sale of Defendants' products in Utah Wal-Mart stores in the fall of 2008 and that the "Desert Sand Hearth" was a replica of, and substantially similar to, the "Sandstone" warmer in which Scentsy holds a registered copyright. (Dkt. No. 1, p. 8). Count Five further alleges that Defendants had "access" to Scentsy's "Sandstone" warmer which is presumably through Mr. Palmer's purchase of the item from a Scentsy consultant on May 13, 2008. (Dkt. No. 1, Dkt. No. 41, Ex. A). The December 4, 2008 cease and desist letter makes allegations of violations as to several of Scentsy's product line and uses the "Sandstone" warmer as an example. (Dkt. No. 1, Ex. F). Defendants argue none of the allegations support jurisdiction for the copyright claim because Defendants designed the item before Scentsy registered its copyright on October 10, 2008 and ceased producing the item in November of 2008 before receiving the December 4, 2008 cease and desist letter and before this action was filed on December 22, 2008. (Dkt. No. 52, pp. 5-6 n. 5). This argument goes more towards whether Scentsy will be able to prove its copyright claim. On this motion, the Court is to determine whether personal jurisdiction exits.[4] On that question,

---

[4] As to the fraud claim, Count 8, the Defendants do argue dismissal is proper pursuant to both Rules 9(b) for failure to plead with particularity and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. These arguments will be addressed in a separate section of this Order below.

MEMORANDUM ORDER - Page 9

the Court concludes that the Plaintiff's allegations against Defendants give rise to their claim against the Defendants such that the claim arises out of the alleged violating conduct. But for Defendants' alleged conduct, this injury in Idaho would not have occurred. Thus, Scentsy's claims arise out of the Defendants' Idaho-related activities.

3.    Reasonable Exercise of Jurisdiction

Finally, the Court must determine whether the exercise of jurisdiction is reasonable looking at seven factors: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendants' state; extent of purposeful interjection; and the forum state's interest in the suit. Brand v. Menlove Dodge, 796 F. 2d 1070, 1075 (9th Cir. 1986). It is well established that in determining personal jurisdiction the court must focus primarily on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Defendants argue even if the Court finds Scentsy has carried its burden on the first jurisdictional two prongs, specific jurisdiction is still not proper in Idaho when considering the seven reasonableness factors. In balancing the seven factors, the Court finds jurisdiction in Idaho comports with "fair play and substantial justice." Paccar Int'l v. Commerical Bank of Kuwait, S.A.K., 757 F.2d 1058 (9th Cir. 1985). Since Scentsy alleges Defendants' actions have infringed upon their brand in various ways knowing Scentsy is located in Idaho, the factor of purposeful injection weighs in Scentsy's favor. The burden of litigating the case on the parties is relatively equal regardless of whether the case is tried in Idaho or Utah and Idaho has a strong interest in providing redress for its residents alleging tortious injury. There is no conflict with sovereigns in this case as both parties are located in the United States. In considering the efficient judicial resolution of this case, the Court finds that this too a wash. Either the federal district court in Idaho or Utah would manage the case efficiently and effectively to properly allocate limited judicial resources and still allow the parties their day in court. The Court holds that because the alleged violating conduct resulted in an injury in Idaho coupled with Idaho's interest in resolving such claims outweighs the

little burden or inconvenience the Defendants will face in litigation the case in this forum. Accordingly, exercising personal jurisdiction over the Defendants in Idaho is reasonable.


II.     Defendant Mr. Palmer's Motion to Dismiss - Fraud Claim

        As noted above, Mr. Palmer seeks dismissal of the fraud claim, Count 8, pursuant to both Rules 9(b) for failure to plead with particularity and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[5] "A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." Schimsky v. U.S. Office of Personnel Management, 2008 WL 5024916 *2 (S.D. Cal. 2008) (citing Navarro v. Black, 250 F.3d 729, 731 (9th Cir. 2001)). In considering a motion to dismiss pursuant to Rule 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)).

        Because Count 8 of the complaint in this case is a fraud claim, Federal Rule of Civil Procedure 9(b) applies and requires: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against

---

        [5] This claim is alleged only as to Mr. Palmer, not any of the other Defendants.

MEMORANDUM ORDER - Page 11

the charge and not just deny that they have done anything wrong." <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted).  "Fraud must be pleaded with particularity.  That is, the alleging party must specify what factual circumstances constituted the fraud."  <u>Glaze v. Deffenbaugh</u>, 172 P.3d 1104, 1108 (Idaho 2007).  A claim of fraud requires the plaintiff to establish nine elements with particularity: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. <u>Chavez v. Barrus</u>, 192 P.3d 1036, 1047 (Idaho 2008) (citations omitted); <u>see also</u> <u>Partout v. Harper</u>, 183 P.3d 771, 776 (Idaho 2008); <u>Wisdom v. Centerville Fire Dist., Inc.</u>, 2008 WL 4372009 *25 (D. Idaho 2008).  Count 8 here alleges:

> 86.  Scentsy repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 85, inclusive.

> 87.  In his efforts to unfairly compete with and obtain confidential information of Scentsy, Defendant Palmer deliberately traveled to Idaho and represented himself as needing a tour of the Scentsy manufacturing facility for a legitimate purpose that would not harm Scentsy's business.

> 88.  This representation was false and misleading as Defendant Palmer's only motive in obtaining a tour of Scentsy's facility was to gain as much information about Scentsy's business and confidential information as possible in order to manufacture copies of Scentsy's products and intellectual property for profit.

> 89.  Scentsy relied on Defendant Palmer's misrepresentations and would not have provided Mr. Palmer access to its manufacturing facilities absent the misrepresentation.

> 90.  As a result of Defendant Palmer's wrongful, deliberate and egregious actions, Scentsy has been damaged in an amount to be proven at trial.

Mr. Palmer argues the elements of justifiable reliance and injury are not properly alleged.  Scentsy's response to the motion to dismiss does not address this argument.  Mr. Palmer's reply brief argues that Scentsy has "utterly failed to support its claim that Palmer was given a tour under some false pretense" because the affidavit of the only individual with

"firsthand knowledge," Nichelle Averett, does not plead the elements of a fraud claim with particularity or any resulting damages. (Dkt. No. 52, p. 7 n. 7). Ms. Averett's affidavit (Dkt. No. 37, Affidavit of Nichelle Averett) includes her description of the events of October 9, 2008 when Mr. Palmer and his wife came to the Scentsy facility in Idaho. Having reviewed the complaint, the parties' briefs, and the record herein, the Court agrees that Count 8 fails to plead the fraud claim against Mr. Palmer with the particularity required by Rule 9. In particular, as to the element of justifiable reliance, there is no allegation that Scentsy was justified in relying upon the alleged misrepresentation. Likewise, the damages allegation is general without any allegation of a particular injury that resulted from the alleged fraud. Accordingly, the Court will grant Mr. Palmer's motion to dismiss as to Count 8.

III.    Scentsy's Motion for Preliminary Injunction

    A.    Standard of Law

Until recently in the Ninth Circuit, a plaintiff is entitled to a preliminary injunction when it can demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits, where the balance of hardships tips sharply in plaintiff's favor. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-05 (9th Cir. 2000). The Supreme Court, however, found the Ninth Circuit's standard of the "possibility of irreparable harm" was too lenient and held that a plaintiff must demonstrate that irreparable injury is "likely in the absence of an injunction." Winter v. Natural Resources Defense Council, ___ U.S. ___, 129 S.Ct. 365, 375 (2008). "Issuing a preliminary injunction based only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam )). Because a preliminary injunction is an extraordinary remedy, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or

MEMORANDUM ORDER - Page 13

withholding of the requested relief.'" <u>Id</u>. at 376 (citing <u>Amoco Production Co. v. Gambell</u>, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Id</u>. at 376-77 (citations and quotations omitted). Thus, no longer are plaintiffs granted the presumption of irreparable harm upon a showing of likelihood of success on the merits. Instead, plaintiffs seeking a preliminary injunction must establish they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. <u>Jacobsen v. Katzer</u>, CV 06-01905-JSW, 2009 WL 29881 *8 (N.D. Cal. Jan. 5, 2009).

> B.     <u>Preliminary Injunction as to Rimports and Mr. Palmer</u>

Scentsy's motion for preliminary injunction, seeks a court order enjoining Rimports and Mr. Palmer from willfully infringing its copyrighted material and trade dress. In doing so, Scentsy asks that the Court enjoin Rimports and Mr. Palmer from selling its warmers and waxes arguing that continued sales of these products will cause further irreparable harm to Scentsy's goodwill.

Scentsy's trade dress infringement claim against Rimports and Mr. Palmer is the real focus of the motion for preliminary injunction. Trade dress refers to the complete or total image and appearance of a product including size, shape, color, texture or graphics. <u>Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.</u>, 457 F.3d 1062, 1067 (9th Cir. 2006); <u>International Jensen, Inc. v. Metrosound U.S.A.</u>, 4 F.3d 819, 822 n. 3 (9th Cir. 1993). A trade dress claim requires the holder to prove: "(1) that its claimed dress is non-functional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendants' product creates a likelihood of confusion." <u>Clicks Billiards, Inc. v. Sixshooters, Inc.</u>, 251 F.3d 1252, 1258 (9th Cir. 2001). Functional trade dress is not protected. <u>See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.</u>, 826 F.2d 837, 842 (9th Cir. 1987).

1.      Function

The Supreme Court has offered a simple definition of functionality:  "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Au-Tomotive Gold, 457 F.3d at 1070 (citing Inwood Labratories, Inc. v. Ives Labratories, Inc., 456 U.S. 844, 850 n. 10 (1982)).  As to functionality, "purely aesthetic product features may be protected...where they are source identifying and are not functional. On the other hand, where an aesthetic product feature serves a 'significant non trademark function,' the doctrine may preclude protection...where doing so would stifle legitimate competition." Au-Tomotive Gold, 457 F.3d at 1064 (quoting Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 170 (1995)).

2.      Secondary Meaning

"The trade dress of a product ... attains secondary meaning when the purchasing public associates the dress with a particular product ." Clicks, 251 F.3d at 1262.  The elements making up the trade dress "must have been used in such a manner as to denote product source." Id. Thus, a product feature whose impact is only "decorative and aesthetic, with no source-identifying role, cannot be given exclusive rights under trade dress law." Id. "[P]roof of secondary meaning entails vigorous evidentiary requirements." Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 43 (1st Cir. 2001). "The only direct evidence probative of secondary meaning is consumer surveys and testimony by individual consumers." Id. Aside from direct evidence, a trade dress plaintiff may establish secondary meaning in a variety of ways including "exclusivity, manner and length of use ..., amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages v. Asian journal Pubs., Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

3.      Likelihood of Confusion

"The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the

marks." Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998) (internal quotation marks and citation omitted). Confusion must be "probable, not simply a possibility." Cohn v. Petsmart, Inc., 281 F.3d 837, 842 (9th Cir. 2002) (per curiam) (internal quotation marks omitted).  The likelihood of confusion is determined by considering eight factors:  "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets."  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 608 (9th Cir. 2005) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) *abrogated in part on other grounds by* Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792 (9th Cir.2003)). Courts should not mechanically apply the Sleekcraft factors; "[s]ome factors are much more important than others, and that the relative importance of each factor will be case-specific." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1 999); see also Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002) ("[W]e do not decide whether confusion is likely by considering mechanically the number of Sleekcraft factors that weigh in favor of either party, or by giving the same weight to a particular factor from case to case.").

### 4.    Conclusion

The Court finds that Scentsy has demonstrated a likelihood of success on the merits of their trade dress claim.  The products at issue are strikingly similar in color, shape, size, and texture.  Defendants argue the warmer and wax bars are functional as they are essential to the products use; pointing to the removable tray, porcelain base, 25-watt bulb, a cord and switch, and the wax bars break apart sections and reusable container.  The features identified generally by Defendants as functional do not appear to be those for which Scentsy seeks trade dress.  Defendants' argument breaks the products down into generalized pieces and labels them each as functional. Scentsy's allegations, however, seek to protect the trade dress of the overall appearance of its warmers, wax bars, and the combination of the two such that

their elements together create a distinctive impression in a nonfunctional way.  See Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 842 (9th Cir. 1987).  The Court finds that the facts alleged in the complaint go to the likelihood that the product features of Scentsy's warmers and wax bars and the combination of the two are non-essential to the use or purpose of the products such that they are non-functional.

As to the secondary meaning element, Scentsy argues this is met by the actual confusion of Scentsy's own representatives who can not distinguish between their own products and those of the Defendants.  While this argument seems to lump two elements together, the Court agrees that the Scentsy brand products do appear to carry identifying features in its warmers and fragrance bars.  Defendants' decision to market products with the same identifying features is telling of the secondary meaning element.  There are many other possible colors, designs, sizes, and packaging options for Defendants to choose from.  By selling products with little or no difference to Scentsy's products, arguably, seeks to benefit from the source identifying features of the Scentsy products.  Further, the Defendants' argument that Scentsy has not proven this element asks for more than is required on this motion.  The Court finds that as alleged in the complaint, Scentsy has demonstrated a likelihood of success in showing its warmers, wax bars, and the combination of the two have gained secondary meaning that is source identifying to the Scentsy brand.

Further, the Court finds Scentsy has alleged facts which show a likelihood of confusion in customers. The warmers are identical or nearly identical in size, shape, form, color, texture, and design with at least one warmer, the Desert Sand Hearth which is the subject of the copyright infringement claim, as being identical. The fragrance bars too are of the same shape, color, packaging and, in some cases, the same name.  The likelihood of confusion was evidenced to the Court when, upon examining the exhibits, was itself confused between which products belonged to which brand.  Though the Defendants argue that their products carry their own brand name on the package, once removed from the package the label disappears and all that is left are two identical looking warmers and wax bars.  Though the Defendants may be correct that Scentsy will not be able to prove customer

MEMORANDUM ORDER - Page 17

confusion, at this stage Scentsy has shown a likelihood of success based on its allegations.

However, Scentsy has not shown irreparable injury will result from maintaining the status quo by allowing Rimports' products to be sold at Wal-Mart stores in Utah. Any harm or damage suffered by Scentsy from these sales, has already been incurred. Sales of Defendants' products in a manner or in markets beyond that which were ongoing prior to the filing of this lawsuit, however, would likely cause irreparable harm not already suffered by Scentsy. As such, the Court will continue the conditions of the TRO so as to allow Rimports and Mr. Palmer to continue to sell its products in the same volume and at the same Utah Wal-Mart stores where they were sold before this litigation began. Rimports and Mr. Palmer are precluded from any other sales of their products. This resolution takes into account the necessary balancing of the equities so as to preclude any future harm to Scentsy while allowing Rimports and Mr. Palmer to remain in business. The Court acknowledges Scentsy's concern regarding the loss of goodwill that may result from the ongoing sales of Rimports' products. This concern, however, is minimal given the bulk of any injury incurred by Scentsy from these sales has already happened and the fatal impact the caseation of all sales would have upon Rimports and Mr. Palmer.

Further, the Court has considered the public interest in entering this injunction. Though the public has a strong interest in allowing competition in the marketplace, it also has an interest in allowing a company who took the time and resources to develop a product and/or brand to enjoy their legal protections and profits for their entrepreneurial efforts. This instant injunction seeks to ensure both interests of the public are accounted for until final resolution of this matter.

C.      Preliminary Injunction as to PMI and Mr. Duff

Scentsy's motion for preliminary injunction, seeks a court order enjoining PMI and Mr. Duff from use, dissemination, transfer, and sale of Scentsy's confidential and trade secret information. In particular, Scentsy seeks to stop PMI from delivering a wax/packaging machine to Rimports and Mr. Palmer. The machine, Scentsy argues, would cause irreparable

MEMORANDUM ORDER - Page 18

harm by revealing to Rimports and Mr. Palmer Scentsy's proprietary, confidential, and/or trade secret information regarding its unique wax formulas.

Count 1 raises a claim of misappropriation of trade secrets in violation of the Idaho Trade Secrets Act ("ITSA"), Idaho Code §§ 48-801, *et seq*., by PMI and Mr. Duff.  Idaho Code § 48-801(2) "is clear and unambiguous on its face.  In order to prevail on a misappropriation claim, the claimant must prove that the adverse party acquired, disclosed, or used the claimant's trade secrets." Northwest Bec-Corp. v. Home Living Service, 41 P.3d 263, 269 (Idaho 2002).  "[U]nder the ITSA, the plaintiff must show that a trade secret actually existed." Basic American, Inc. v. Shatila, 992 P.2d 175, 183 (Idaho 1999) (citing I.C. § 48-801).  "Without a proven trade secret there can be no misappropriation, even if the defendants' action was wrongful." Id. (citation omitted).  The ITSA defines a trade secret to mean "information, including a formula, pattern, compilation, program, computer program, device, method, technique or process, that:  (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy...." Id. at 183-84 (citing I.C. § 48-801(5)(a)-(b)).

The facts here are heavily disputed between the parties.  Scentsy asserts that it has trade secrets in the formula of its wax bars including the ingredients and the heating/cooling rates and temperatures.  The machines, Scentsy argues, only work with Scentsy's own secret wax formula and specific heating/cooling temperatures and rates which is why Scentsy was required to reveal its trade secrets to PMI.  PMI argues that the machines contain no trade secrets or confidential information and that their only function is packaging the wax.  Scentsy counters that the machines it purchased from PMI were designed specifically for and in conjunction with Scentsy to incorporate their trade secrets.  PMI disputes this and claims the machines contain only minor modifications to an existing packaging machine that it has sold to customers since 1992.  Further, PMI argues that no trade secrets exist, it did not receive any trade secrets, and that the machines do not reveal any trade secrets.  Scentsy alleges the

MEMORANDUM ORDER - Page 19

machines it purchased from PMI are new designs not those that PMI has been producing and selling to customers since 1992.  The parties also dispute the extent to which they were each involved in the designing of the machines and what the machines actually do; i.e. whether the machines melt the wax or just package the wax.

In Count 6, Scentsy alleges breach of contract against PMI as to the confidentiality agreement between the parties.  Scentsy alleges that PMI agreed in writing that Scentsy's confidential information would remain confidential and that PMI would not disclose such information.  Scentsy further alleges that PMI breached this agreement by disclosing its confidential information, including its secret wax formula, to Rimports and Mr. Palmer.  PMI argues the confidentiality agreement does not preclude it from selling packaging machines to other customers and that Scentsy did not disclose any confidential information to PMI and, therefore, PMI has no confidential information to disclose.  Alternatively, PMI asserts that even if it had received confidential information, the sale of its machine does not disclose any confidential information.  Further, PMI disputes whether any contract existed with the preclusive terms alleged by Scentsy.

Based on the allegations in the complaint, if found to be true, the Court finds Scentsy has demonstrated both a likelihood of success on the merits of their claims and a likelihood of irreparable injury.  Scentsy has alleged trade secrets as to its wax products that are unique to its brand.  The disclosure of those secrets to PMI, Scentsy asserts, was necessary to design the machines and, therefore, those secrets are imbedded into the machines produced by PMI.  As a result, Scentsy contends, the disclosure of the trade secrets are in violation of the ITSA and the parties' confidentiality agreement.  Section 48-802 allows for injunctive relief where misappropriation of a trade secret is actual or threatened.  Because the allegations, if true, indicate a likelihood that trade secrets exist and that the disclosure of a machine matching those produced by PMI and sold to Scentsy would reveal the trade secrets, the Court finds a limited injunction is warranted.  The injunction is limited to PMI's sale of any machines matching those designed for and purchased by Scentsy or any machine or any other disclosure that would reveal the alleged trade secrets of Scentsy.

MEMORANDUM ORDER - Page 20

PMI argues no irreparable harm exists because Rimports has already been producing and selling its products without the PMI machine.  While this may be true, Scentsy's allegations are that because of its secrets its wax is superior in scent and melting and that the injury will occur when Rimports obtains its wax secrets.  The argument being that once the cat is out of the bag you can never put it back in.  The Court finds that if Scentsy's allegations are true, even if the trade secrets are not yet revealed and that even though Rimports is producing a similar product, the revelation of the trade secrets would irreparable injure Scentsy.  Further, in balancing the equities the Court finds the limited injunction affords PMI the ability to continue its business of selling machines that do not contain Scentsy's alleged trade secrets while also maintaining the confidentiality of those alleged secrets.  Further, the public interest is met by this injunction as it maintains the status quo until the issues in this litigation are resolved.

IV.   Motion for Order to Show Cause

Before the Court was able to issue this preliminary injunction, Scentsy has filed a motion for order to show cause alleging Rimports and Mr. Palmer have violated the TRO previously issued. (Dkt. No. 55).  In particular, Scentsy challenges the sales of Defendants' products at Utah Wal-Mart stores and the sale of Defendants' Desert Sand Hearth warmer.

As detailed in this Order, the Court has weighed the necessary factors as to each side and has ordered an injunction preserving the status quo.  This preliminary injunction allows Rimports and Mr. Palmer to continue to sell its products to the same Utah Wal-Mart stores in the same manner and volume as done prior to the filing of this lawsuit.  As to the sale of Defendants' Desert Sand Hearth warmer, it appears that the parties are in agreement that this product will no longer be sold. (Dkt. No. 43).  Accordingly, the Court will order the same. The Defendants shall immediately take the necessary steps to assure the Desert Sand Hearth warmer is no longer sold by any individual or business.

MEMORANDUM ORDER - Page 21

In light of the findings in this preliminary injunction order and based on the foregoing, the Court deems the motion for order to show cause moot. The parties are directed to comply with this preliminary injunction in all respects and to pursue resolution of this matter expeditiously and in good faith.

## ORDER

Being fully advised in the premises, the Court hereby orders:

1)   Defendants' Motion to Dismiss (Docket No. 32) is **DENIED**.

2)   Plaintiff's Motion to Amend (Docket No. 51) is **MOOT**.[6]

3)   Plaintiff's Motion for Order to Show Cause (Docket No. 55) is **MOOT**.

4)   Plaintiff's Motion for Preliminary Injunction (Docket No. 3) is **GRANTED IN PART AND DENIED IN PART** as follows.

I.   All Defendants are enjoined from

a.   Accessing or attempting to access or acquire any of Plaintiff's proprietary, confidential, and/or trade secret information, including but not limited to data which was and has been maintained on Scentsy's computer equipment and/or systems;

b.   Reviewing, copying, disclosing, divulging, making use of, capitalizing in any way on, developing, marketing, or selling products, services or offerings based upon, or otherwise appropriating (or inabling others to do so), any of Scentsy's proprietary, confidential, and/or trade secret information, which Defendants have or had in their possession, custody, or control;

c.   Misappropriating, acquiring, or using any of Scentsy's trade secrets;

---

[6] The Court did not rely on the proposed additional affidavits.

        d.      Copying, distributing, displaying, creating derivative works or otherwise using protected elements of Scentsy's wickless candle warmers or fragrance bars.

II.      Defendants Performance Manufacturing, Inc. and Mike Duff are enjoined from transferring, selling, or shipping (directly or indirectly) a wax melting and/or packaging machine similar to those manufactured by Performance Manufacturing, Inc. for Scentsy to Defendants Rimpors, LLC and/or Jeffery W. Palmer or to any third party.

III.     Defendants Performance Manufacturing, Inc. and Mike Duff are enjoined from providing any information to Defendants Rimports, LLC and/or Jeffery W. Palmer or to any third party which representatives of Performance Manufacturing, Inc. received from Scentsy or its representatives while working with Scentsy to manufacture the wax melting and/or packaging machines at issue in this case.

IV.     Defendants Rimports, LLC and Jeffery W. Palmer are enjoined from distributing and/or selling its ScentSationals model warmers and ScentSationals brand fragrance bars in the six-cubed clamshell packaging containers to any new purchasers, which includes any purchasers other than the Utah Wal-Mart stores that were selling Rimports products before the date of the filing of this lawsuit.

V.      Defendants Rimports, LLC and Jeffery W. Palmer are enjoined from selling the ScentSationals "Desert Sand Hearth" warmer and shall take whatever immediate action is necessary to assure this product is not sold by Defendants or any other individual or business.

MEMORANDUM ORDER - Page 23

IT IS FURTHER ORDERED that Plaintiff shall immediately file with the Clerk of the Court a security in the sum of $40,000 pursuant to Rule 65 such that the total security held in this case totals $50,000.

IT IS FURTHER ORDERED that this Preliminary Injunction shall remain in effect until otherwise ordered by the Court.

DATED:  **February 9, 2009**

Honorable Edward J. Lodge
U. S. District Judge