Barnard N. Madsen (Utah Bar No. 4626)
Matthew R. Howell (Utah Bar No. 6571)
FILLMORE SPENCER, LLC
Attorneys for Defendant
3301 N. University Avenue
Provo, Utah  84604
Tel:  (801) 426-8200
Fax: (801) 426-8208
E-mail:  bmadsen@fslaw.com
         mhowell@fslw.com

Maurice O. Ellsworth (Idaho Bar No.1842)
Perry Law, PC
2627 W. Idaho St.
PO Box 637
Boise, Idaho 87301
Tel:  (208) 338-1001
Fax:  (208) 338-8400
E-mail:  moe@perrylawpc.com

Attorneys for Defendants Rimports, LLC and Jeffery W. Palmer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>PERFORMANCE MANUFACTURING, INC., a Georgia corporation; RIMPORTS (USA), LLC, a Utah limited liability company; JEFFERY W. PALMER, an individual; and MIKE DUFF, an individual,<br><br>Defendants. | Case No. 1:08-cv-00553-EJL<br><br>**MEMORANDUM IN SUPPORT OF THE RIMPORTS DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION (DKT 56)**<br><br>(Special Appearance)<br><br>(Expedited Briefing Requested) |

In the alternative to their Motion for Reconsideration, filed simultaneously herewith, Defendants Rimports (USA), LLC ("Rimports") and Jeffrey W. Palmer ("Palmer") (collectively, the "Rimports Defendants"), by special appearance of their undersigned counsel, respectfully

1

request this Court to modify the preliminary injunction entered on 9 February 2009 (the "Preliminary Injunction"). If the Court declines to vacate the Preliminary Injunction in its entirety, the Rimports Defendants respectfully request that the Court modify the scope of the Preliminary Injunction in consideration of the following three interrelated changed circumstances[1]:

(1) Rimports has a new line of eight warmers, which are being sold after imposition of the injunction, and which Rimports believes do not infringe Scentsy's trade dress;

(2) After the Court entered the preliminary injunction, Rimports lost a substantial sale to a chain of 1,100 stores outside the United States, where, upon information and belief, Scentsy has not sold its products and where its trade dress has not, therefore, acquired secondary meaning; and

(3) After the Court entered the preliminary injunction, Rimports lost a sale to a national retailer that would have netted Rimports $141,000 in profit, as well as substantial follow-on profits from the same retailer;

(4) Rimports proposes, pending a trial on the merits, to include on all of its packaging a prominent disclaimer that it is "Not affiliated with Scentsy, Inc.," thereby obviating any risk of a likelihood of consumer confusion in any market.

If the Court declines to modify the current scope of the Preliminary Injunction in light of these changed circumstances, the Rimports Defendants respectfully request, in the alternative, that the Court substantially increase the amount of the required bond. If left unmodified, the

---

[1] This alternative motion to modify the Preliminary Injunction is supported by the Declaration of Jeffrey W. Palmer dated February 18, 2009 ("Palmer IV"). The Rimports Defendants recognize that the record with respect to the Motion for Preliminary Injunction is closed and submit Palmer IV solely for the purpose of providing new information to the Court to support modifying the scope of the Preliminary Injunction and to increase the amount of the bond.

current Preliminary Injunction will not preserve the status quo but will have the effect of putting Rimports out of business.

## I.  Applicable Law

The Federal Rules provide that the Court "may relieve a party" from an order if "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5) and (6).  The Court should modify an injunction that has been turned through changing circumstances into "an instrument of wrong." *System Federation No. 91, et al. v. O.V. Wright, et al.*, 364 U.S. 642, 647 (1961).  Indeed, the purpose of a motion to modify a preliminary injunction is "to relieve inequities that arise after the original order." *Credit Suisse First Boston Corporation v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2003), *quoting Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 338 (3rd Cir. 1993).

## II.  Argument

### A.  The Court Should Modify The Scope Of The Preliminary Injunction To Permit Rimports To Sell Its New Non-Infringing Warmers

"A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  Injunctive relief should "be tailored to remedy the specific harm alleged." *Id*.  "An overbroad injunction is an abuse of discretion." *Id*.

Here, the Preliminary Injunction currently prevents Rimports from selling *any* warmers *anywhere* in the world – other than to the Wal-Mart stores where it has already sold them – whether or not a particular warmer causes confusion as to source and whether or not Scentsy also sells its products in a particular geographic market. Rimports has recently received from its supplier a line of eight new warmers that Rimports believes does not infringe Scentsy's trade

dress.  If, in fact, the new line of warmers does not infringe Scentsy's trade dress, an injunction preventing Rimports from selling them would be overbroad.

On 2 February 2009 (while a ruling on the injunction was pending, and one week before the Court's ruling), Rimports began selling its new "Teardrop Vase," "Love Scroll," and "Fleur De Lis" warmers.  On 6 February 2009 (three days after the Court's ruling on an injunction), Rimports began selling its "Daisey Daze" and "Tulip" warmers, and on 13 February 2009, Rimports received in its inventory new "Vineyard" and "Salsa" warmers.  Photographs of all of Rimports' new warmers are attached to Palmer IV.  Palmer IV ¶ 3 and its Exhibits 1-8.

Although neither Scentsy nor this Court has ever described Scentsy's trade dress in a way that would enable Rimports, itself, to determine whether a particular warmer might infringe Scentsy's trade dress, Rimports believes that its new line of warmers is non-infringing.  However, in light of the injunction prohibiting Rimports from selling *any* warmers other than to Utah Wal-Mart stores, Rimports respectfully requests that the Court modify the Preliminary Injunction to allow Rimports to sell its new line of warmers to customers in addition to Utah Wal-Marts.

**B. The Court Should Modify The Scope Of The Preliminary Injunction To Permit Rimports To Sell Its Products In Any Geographic Market Where Scentsy Does Not Currently Sell Its Products**

A central issue of Rimports' motion for reconsideration is secondary meaning.  Even if the Court enters findings of fact and conclusions of law that Scentsy's warmers and fragrance bars have acquired secondary meaning in Idaho or even Utah, it is unclear whether the scope of such secondary meaning extends beyond those two states.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 n.12 (9th Cir. 1979)(once secondary meaning is established, "the protection afforded should be commensurate with the degree of consumer association proven").  Scentsy has

not provided any evidence on where it sells its products or where its trade dress might have acquired secondary meaning.

Rimports intended to close on a substantial sale of its products this week in a market where, upon information and belief, Scentsy has not sold its products and where its trade dress has not, therefore, acquired secondary meaning. Palmer IV ¶ 5. The Rimports Defendants respectfully submit that the Preliminary Injunction is therefore overbroad because it prevents non-infringing sales. The Rimports Defendants therefore respectfully request that the Preliminary Injunction be modified to allow Rimports to sell warmers and scented wax in the six-cubed clamshell packaging in areas where Scentsy does not sell (and where Scentsy's products have not, therefore, acquired any secondary meaning), particularly in international markets.

### C. The Court Should Modify The Preliminary Injunction To Permit Rimports To Sell Its Warmers and Scented Wax In Any Market With An Approved Disclaimer

The Discussion section of the Memorandum Order (but not the order itself) requires Rimports to sell its products to Utah Wal-Mart stores "in the same manner and volume as done prior to the filing of this lawsuit." Memorandum Order at 21; *cf. id.* at 17. Enjoining Rimports from increasing its sales during a marketing test with Utah Wal-Mart stores will cause the marketing test to fail, and effectively prevent Rimports from expanding its Wal-Mart sales to a regional test and eventually to all Wal-Mart stores even if the Preliminary Injunction ultimately is found to have been wrongfully entered. Simply put, Wal-Mart will not continue to do business with a supplier that cannot provide the increasing volume of product Wal-Mart desires. Palmer IV ¶¶ 7-9.

The direct result of the current Preliminary Injunction will therefore be to put Rimports out of business, something the Court, in its ruling, said it did not want or intend to do. *See*

Memorandum Order at 21 ("This resolution … [will allow] Rimports and Mr. Palmer to remain in business. … [Cessation] of all sales would have … a fatal impact … upon Rimports and Mr. Palmer."). To prevent this, Rimports is prepared, with the Court's approval, to modify its packaging to disclaim any affiliation with Scentsy and thereby eliminate the possibility of any confusion as to source in Utah Wal-Mart stores and beyond.

After receiving Scentsy's cease and desist letter, Rimports modified its scented wax labels and began affixing them to all new packages beginning the first week of January. All new stock currently have these new labels which differ from those on exhibits before the Court by listing "Rimports (USA), LLC" as the manufacturer and providing the company address. Palmer IV ¶ 10, Exhibit 10.

Because neither the Court nor Scentsy has ever identified the protectable elements of Scentsy's alleged trade dress, Rimports cannot determine what is required for it to sell non-infringing warmers or scented wax. If the Court denies the Rimports Defendants motion for reconsideration, the Rimports Defendants seek a middle ground modification of the injunction: rather than grant or deny total relief to Scentsy, approve Rimports' prominent placement of disclaiming labels to prevent any likelihood of confusion by consumers. Rimports proposes to affix adhesive labels to all of its wax warmer and scented wax products with the words, "Not affiliated with Scentsy, Inc." Rimports respectfully requests that the Court modify the Preliminary Injunction to approve of such labeling, and to permit Rimports to sell its products in any market with such labeling since it will obviate any likelihood of confusion. *Paul Frank Industries, Inc. v. Sunich*, 502 F.Supp.2d 1094, 1104 (C.D. CA 2007) (use of name permitted on websites "so long as those sites maintain the disclaimer that Mr. Sunich is no longer affiliated with PFI").

### D. If The Court Denies All Three Requested Modifications, The Rimports Defendants Request, In The Alternative, That The Court Increase The Amount Of The Bond

The Preliminary Injunction provides for additional security of $40,000 for a total of a $50,000 bond. If the Court denies all three requests for modification herein, in the alternative, the Rimports Defendants respectfully request the Court to increase the amount of the bond to more closely approximate the damages that Rimports is likely to suffer in the event Rimports is ultimately determined to have been wrongfully enjoined.

Rimports has already lost profits in excess of $140,000 as a result of the temporary restraining order and will lose substantially more than that each month the Preliminary Injunction remains in effect. Palmer IV ¶ 4.[2] Indeed, as currently drafted, the Preliminary Injunction will likely have the effect of putting the Rimports Defendants out of business. Accordingly, a bond in the amount of $50,000 is not sufficient "to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). The Rimports Defendants respectfully request that the bond be increased to a total of $4,000,000 (or an additional bond payment of $3,950,000). This amount is calculated from the minimum lost profits for one month ($141,000) multiplied by twenty-eight months (the expected length of the current litigation). Because this represents the amount of profit that Rimports can demonstrate it is likely to lose with respect to a single retailer, the actual damages from a wrongful injunction would likely exceed that amount substantially.

---

[2] A copy of the purchase order has been attached as Exhibit 11 to Palmer IV, redacted to obscure financial information and information identifying the retailer. The Rimports Defendants is prepared to provide an un-redacted copy of the purchase order to the Court for review *in camera* but is unwilling to provide a copy thereof to Scentsy until an appropriate protective order has been entered.

## IV.     Conclusion

In the alternative to their motion for reconsideration, the Rimports Defendants' motion for modification should be granted to enable them to remain in business pending a trial on the merits, or, in the alternative, the bond should be increased to $4,000,000.

DATED this 18th day of February, 2009.

                                                    FILLMORE SPENCER LLC

                                                   /s/ Matthew R. Howell_____
                                                   Barnard N. Madsen
                                                   Matthew R. Howell
                                                   Attorneys for Attorneys for Defendants Rimports (USA), LLC and Jeffery W. Palmer

## CERTIFICATE OF SERVICE

I certify that on the 18th day of February, 2009, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF THE RIMPORTS DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION (DKT 56)** to be sent the court's electronic filing system to the parties who have appeared in this case.

Dean B Arnold, Attorney for Plaintiff
darnold@perkinscoie.com

Shelly H Cozakos, Attorney for Plaintiff
Scozakos@perkinscoie.com

Albert L. Schmeiser
Attorney for Defendants Performance Manufacturing, Inc. and Mike Duff
achmeiser@iplawusa.com

Cynthia D. Beck
Attorney for Defendants Performance Manufacturing, Inc. and Mike Duff
cbeck@iplawusa.com

Dana Herberholz
Attorney for Defendants Performance Manufacturing, Inc. and Mike Duff
herberholz@zarianmidgley.com

John N Zarian
Attorney for Defendants Performance Manufacturing, Inc. and Mike Duff
zarian@zarianmidgley.com

/s/ Matthew R. Howell_____