IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCENTSY, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. CV08-553-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| PERFORMANCE MANUFACTURING, INC., ) et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court in the above entitled matter is Defendant Performance Manufacturing, Inc.'s motion for reconsideration of the Court's Preliminary Injunction Order. The parties have filed their responsive briefing and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

**Factual and Procedural Background**

On February 9, 2009, the Court entered an Order granting the Plaintiff's, Scentsy, Inc., motion for preliminary injunction against the Defendants in this action, Performance Manufacturing, Inc. ("PMI"), Mike Duff, Rimports (USA) LLC, and Jeffery Palmer. (Dkt. No. 56). The injunction precluded PMI from delivering a machine it had built for Rimports and also barred Rimports from distributing or selling certain of its products except as it had sold them prior to the injunction being entered. (Dkt. No. 56). Thereafter, Rimports and Mr. Palmer filed a motion for reconsideration and a motion to modify the injunction challenging that the Court erred in not issuing separate specific findings of fact and conclusions of law and erred in determining Scentsy was likely to succeed on the merits of its trade dress claim. (Dkt. Nos. 57 and 58). PMI also filed a motion for reconsideration of the preliminary injunction as to them, essentially joining in Rimports' motion.

MEMORANDUM ORDER - Page 1

(Dkt. No. 65). The Court held a hearing on the motion filed by Rimports and Mr. Palmer's motion and, on April 3, 2009, the Court granted their motion to reconsider and vacated the Preliminary Injunction Order. (Dkt. No. 97). The Court now takes up PMI's motion for reconsideration and finds as follows.

## Standards of Law

**I.      Motion to Reconsider**

Neither the Federal Rules of Civil Procedure nor the Local Rules provide for a motion to reconsider. However, the Ninth Circuit has stated that motions to reconsider should be treated as motions to alter or amend under Federal Rule of Civil Procedure 59(e). Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1419 (9th Cir. 1984). The scope and purpose of such a motion have been analyzed as follows:

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. (Citations omitted). These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. (Citations omitted). Moreover they cannot be used to argue a case under a new legal theory. (Citations omitted).

Federal Deposit Insurance Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986);

> Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.
> . . .
> [A] rehash of the arguments previously presented affords no basis for a revision of the Court's order.

Illinois Central Gulf Railroad Company, v. Tabor Grain Company, 488 F.Supp. 110, 122 (N.D. Ill. 1980).

Where Rule 59(e) motions are merely being pursued "as a means to reargue matters already argued and disposed of and to put forward additional arguments which [the party] could have made but neglected to make before judgment, [S]uch motions are not properly classifiable as being motions under Rule 59(e)" and must therefore be dismissed. Davis v. Lukhard, 106 F.R.D. 317, 318 (E.D. Va. 1984). See also, Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought -- rightly or wrongly."). The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change

MEMORANDUM ORDER - Page 2

in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996).

## II.     **Preliminary Injunction**

Preliminary injunctions are designed to preserve the status quo pending the ultimate outcome of litigation. They are governed by Federal Rule of Civil Procedure 65(a). While courts are given considerable discretion in deciding whether a preliminary injunction should enter, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. See Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 2d 166 (1974); Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960); and Stanley v. Univ. of Southern California, 13 F.3d 1313 (9th Cir. 1994).

Until recently the preliminary injunction standard in the Ninth Circuit was that a party is entitled to a preliminary injunction when it can demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits, where the balance of hardships tips sharply in plaintiff's favor. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-05 (9th Cir. 2000). The Supreme Court, however, recently found the Ninth Circuit's standard of the "possibility of irreparable harm" was too lenient and held that a plaintiff must demonstrate that irreparable injury is "likely in the absence of an injunction." Winter v. Natural Resources Defense Council, ___ U.S. ___, 129 S.Ct. 365, 375 (2008). "Issuing a preliminary injunction based only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)). Because a preliminary injunction is an extraordinary remedy, "[i]n each case, courts 'must balance the competing claims of injury and must

consider the effect on each party of the granting or withholding of the requested relief.'" Id. at 376 (citing Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. at 376-77 (citations and quotations omitted). Thus, no longer are plaintiffs granted the presumption of irreparable harm upon a showing of a likelihood of success on the merits. Instead, plaintiffs seeking a preliminary injunction must establish they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Jacobsen v. Katzer, CV 06-01905-JSW, 2009 WL 29881 *8 (N.D. Cal. Jan. 5, 2009). The Ninth Circuit recently recognized the applicability of the Winter decision in this Circuit and stating the rule as: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." See American Trucking Ass'ns, Inc. v. City of Los Angeles, ___ F.3d ___, 2009 WL 723993 *4 (9th Cir 2009) (quoting Winter, 129 S.Ct. at 374). This Court will apply the standard articulated in Winter and recognized in this Circuit.

**Analysis**

**I.  Issuing Separate Findings of Fact and Conclusions of Law**

PMI argues the Court erred in failing to provide separate specific factual findings and conclusions of law pursuant to Federal Rules of Civil Procedure 52(a)(2) and 65. Based upon the reasoning previously articulated in the Court's Order (Dkt. No. 97), the Court finds it did not error by not issuing separate findings of fact and conclusions of law.

**II.  Motion to Reconsider**

The preliminary injunction entered in this case prohibits PMI from delivering a wax/packaging machine it built to Defendants Rimports and Mr. Palmer. (Dkt. No. 56). The primary basis for the injunction was Scentsy's allegation that the machine embodies Scentsy's trade secrets and confidential information as to their wax recipe, their formula for mixing melted wax, and the specific wax heating and cooling temperatures and processes. (Dkt. No. 56). In the instant

motion, PMI argues the injunction was issued in error as it applied a prima facie pleading standard and is overbroad. Alternatively, PMI asks that if the injunction remains that a separate larger bond be required.

Scentsy counters that it has "presented substantial evidence showing that it revealed its most coveted trade secrets to PMI – the recipe for its fragrance bars and the methods and manners for heating and cooling the wax when making the fragrance bars. The customized machines built by PMI for Scentsy embody these trade secrets" (Dkt. No. 88). Further, Scentsy argues the injunction is not overbroad because it only limits PMI from selling a machine similar to those sold to Scentsy but still allows PMI to sell its machine off-the-shelf or with modifications other than those used on the machines sold to Scentsy.

When entering the injunction, the Court recognized that the facts regarding the claims against PMI were heavily disputed; particularly as to whether or not the machine embodies any of Scentsy's trade secrets or confidential information. (Dkt. No. 56). The Court accepted Scentsy's allegations regarding the machine as true. The standard for a preliminary injunction, however, does not provide for such a presumption. Instead, the party seeking a preliminary injunction must establish they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Jacobsen v. Katzer, CV 06-01905-JSW, 2009 WL 29881 *8 (N.D. Cal. Jan. 5, 2009). As such, the Court has reconsidered the record as it existed at the time the preliminary injunction was entered; including the material and arguments provided at the hearing on the temporary restraining order. Having conducted this review, the Court finds Scentsy has not satisfied its burden on the motion for preliminary injunction in that Scentsy has failed to establish that they are likely to succeed on the merits of their claims.

The trade secrets that Scentsy alleges are in jeopardy if PMI is allowed to deliver the machine to Rimports and Mr. Palmer are the Scentsy recipe for its fragrance bars and the methods and manners for mixing, heating, and cooling the wax when making the fragrance bars. Scentsy's motion for preliminary injunction states that in 2007 it sought out to build an automatic system to increase production of its fragrance bars that would consist of three major components: 1) a

MEMORANDUM ORDER - Page 5

conveyor machine, 2) a labeling machine, and 3) a filling machine. (Dkt. No. 37, pp. 3-4). Scentsy contacted PMI through a third party, Dennis Van Acker of Pak West, Inc., to build the filling machine portion of the system. The machine, Scentsy argues, contain three components: 1) a product hopper which holds the wax and fills the containers; 2) a conveyor portion which cools the wax through a series of fans; and 3) a discharge portion which closes the containers holding the wax. (Dkt. No. 37, pp. 4-5). PMI counters that it did not sell Scentsy a "filling machine" but instead sold it a "two auto-close clam shell packaging system, which PMI calls a P-8-E, meaning Performance 8-lane Electric auto-close clam shell packaging system." (Dkt. No. 49, p. 4). PMI describes this component machine as an auto-close clam shell packaging system that does four things: it attaches to the customer's existing equipment and the customer's product is held in a hopper; it denests the clam shall packages one at a time; it uses a filling nozzle attached to the hopper to fill the customer's desired volume of product into each individual clam shell package; and it automatically closes the clam shell package when it is filled. (Dkt. No. 49, p. 5).

The Court finds the evidence in the record demonstrates that the machines PMI produced for Scentsy are not involved in the mixing or melting of wax. Instead, the machines are one component in a part of the overall mechanized process for the mixing, melting, dispensing, cooling, and packaging of the fragrance bars. PMI was involved with the component that dispensed the melted and mixed wax into the clamshell containers for packaging. This component machine, does not melt or mix wax but, instead, holds the wax that has already been melted and mixed by another component and fills the clamshell containers with the previously melted and mixed wax, sends the product on a conveyor belt through a series of fans that cool the wax, and then closes the containers. As such, the only trade secret possibly in peril would be the temperature and process for cooling the wax once it has been dispensed into the clamshell containers. The Court is not satisfied that Scentsy has demonstrated that the cooling process could be considered a trade secret.

Further, it is disputed whether or not PMI was given Scentsy's secret recipe to test the machine. Regardless of whether any trade secrets were disclosed or not, Scentsy's own description of the machine evidences that the wax is already mixed and melted by the time it encounters the machine component that PMI provided. Therefore, even if PMI was given the wax and/or heating

MEMORANDUM ORDER - Page 6

and cooling temperatures in order to test the machine, the machine itself does not embody or reveal any trade secrets as it has nothing to do with the mixing or melting of the wax.  A jury may later find that PMI has violated a confidentiality agreement with Scentsy and/or disclosed trade secrets.  At this stage, however, Scentsy has not shown that it is likely to prevail on such claims.  Undoubtedly, revelation of a trade secret would cause irreparable harm to a company.  Here, however, even if Scentsy gave PMI its trade secrets, it does not appear that the component machines reveal any trade secrets Scentsy is seeking to protect.  The balance of the equities nor the public interest favor entering an injunction in such a case.

There is also a great deal of argument regarding who was involved in the designing of the machines.  Scentsy contends that it provided PMI with the overall design for the machine that was specialized to fit its needs. (Dkt. No. 37, Aff. Van Acker).  Scentsy adds that it "expected to own all proprietary rights to the portion of the machine manufactured by [PMI]" and that it has filed a patent application for its system design. (Dkt. Nos. 37, p. 5 and 15-2).  PMI asserts it sold Scentsy a standard P-8-E Clam Shell system with certain modifications so that it would fit into Scentsy's existing system. (Dkt. No. 36).  PMI further maintains that it has not disclosed any confidential Scentsy information to any third parties and disputes Scentsy's interpretation of the parties' agreements regarding intellectual property rights in the machines' designs.  On these points, the Court again finds that Scentsy has not evidence a likelihood of success on the merits.

Scentsy has not shown it is likely to succeed on its claim that PMI breached the terms of a confidentiality agreement or otherwise misappropriated Scentsy's trade secrets.  The evidence offered by Scentsy is simply too general and consists of mainly allegations without supporting evidence of a likelihood of success on the merits.  Likewise, the record does not demonstrate that Scentsy is likely to succeed on its claim that it owns the design and/or design modifications or customizations made to the machines.  The machine remains unpatented at this time.  The evidence relied on by Scentsy regarding the machines' designs and ownership of the designs is refuted by the affidavits supplied by PMI.  Both sides agree that Scentsy provided specifics of some kind to PMI.  The affidavits supplied by PMI acknowledge that Scentsy necessarily had to provide some specifics in order for them to modify the machines to fit into Scentsy's existing system.  This is consistent

with Scentsy's affidavits that allege it provided to PMI specifics of what wax heating and cooling temperatures. The dispute between the parties is heated over the extend of each sides involvement in the design of the machines, whether the machines were a new design or merely modifications of the existing machine, and who owns the designs. The record does not demonstrate a likelihood that Scentsy will prevail on this claim as the only evidence supporting Scentsy's claims are the allegations in the complaint and affidavits which are refuted by PMI's affidavits. Further, if Scentsy were to succeed in its claim that it owns the design of the machine the damages are not irreparable. If PMI or any third party profits from the design rightfully determined to belong to Scentsy, monetary damages would appropriately compensate Scentsy.[1] Likewise, if PMI's sale of other machines is eventually determined to violate its agreements with Scentsy, monetary damages would be sufficient to compensate Scentsy. Because Scentsy has not demonstrated it is likely to succeed on the merits of its claims against PMI and because it has not shown that it is likely to suffer irreparable harm, the Court will vacate the preliminary injunction.

In vacating the Preliminary Injunction Order the Court does not give unlimited carte blanche authority to PMI to distribute and/or sell its machines without limitation. PMI remains bound by the terms of its contract and/or agreements with Scentsy to the extent they are determined to be applicable. If it is later determined that PMI has violated any of the terms of its agreements with Scentsy by its delivery of any machines to Rimports, Mr. Palmer, or any other third party, PMI could be liable for damages as deemed appropriate by a jury.

---

[1] As determined above, Scentsy has not shown how the machine would reveal any of its trade secrets such that the damages would be irreparable.

MEMORANDUM ORDER - Page 8

### ORDER

Based on the foregoing and being fully advised in the premises, the Court **GRANTS** Defendant's Motion to Reconsider (Dkt. No. 65).  The Preliminary Injunction Order (Dkt. No. 56) is **VACATED** as to Defendant Performance Manufacturing, Inc. and Mike Duff.

DATED:  **April 16, 2009**

Honorable Edward J. Lodge
U. S. District Judge